# Lowenstein & Bros. v. Bresler.

### Action of Assumpsit.

1. *Taking check for pre-existing debt; presumption against it operating as payment.*—The intendment or implication of law from the taking of a check for a pre-existing debt is that it is to operate as payment only in the event that it is cashed; and if it is insisted on as payment, the burden of proof rests on the party making the insistence, and he must repel the legal intendment or implication by evidence as clear and satisfactory as is essential to establish the payment or satisfaction of an admitted debt or demand.

2. *Same; duty of payee; loss or damage resulting from his laches.*—Where a check given for a pre-existing debt is received by the creditor, it is his duty to the drawer to make due presentment of it for payment, and, if it is not paid, to give due notice of its dishonor; and laches in the performance of this duty, resulting in loss or damage to the drawer, to the extent of such loss or damage would operate a satisfaction of the original indebtedness

3. *Intrusting check to drawee for collection; effect of.*—The remitting

of a check to the drawee for collection does not operate its extinguishment or payment; but merely devolves on the drawee the duty and liability of an agent, in addition to the duty of payment if he has funds of the drawer in his hands.

4. *Duty of drawee of check, where funds of drawer are insufficient.*—The drawee of a check is under no duty to make a partial payment of it where the funds of the drawer in his hands are insufficient to meet it.

5. *Agent for collection of check; authority of.*—An agent for the collection of a check is without authority to accept partial payment of it, or to accept payment in exchange on New York, unless such authority has been specially conferred.

6. *Laches of payee of check; when immaterial.*—Where, in an action to recover the amount of a debt for which the defendant had given his check, which was not paid, it appeared that no degree of diligence would have resulted in the payment of the check, the laches of the payee in presenting the check for payment is not material, as the defendant could not have been injured thereby.

APPEAL from the Circuit Court of Colbert.
Tried before the HON. H. C. SPEAKE.

J. B. MOORE, for appellant.

KIRK & ALMON, *contra.*

BRICKELL, C. J.—This was an action on an account for goods sold and delivered, in which the appellants were plaintiffs and the appellee defendant. The trial was had before the court without the intervention of a jury, by consent of the parties, on issue joined on pleas of payment and set-off, and judgment rendered for the defendant, from which the appeal is taken.

There is no conflict in the material evidence. The plaintiffs were merchants, residing and doing business in the city of Memphis, and the defendant was a merchant, residing in the town of Tuscumbia, in this State. The account was due and payable on the 3rd day of June, 1893, amounting to $143.47, and on that day the defendant remitted to plaintiffs his check on the Tuscumbia Banking Company, a partnership doing business in Tuscumbia, payable to the order of plaintiffs, for the amount of the account, and to be applied to its payment. The check was received by the plaintiffs on the 5th day of June, and on that day deposited by them in the Bank of Commerce of Memphis, for collection. On the same

[Lowenstein & Bros. v. Bresler.]

day, the Bank of Commerce remitted the check to the drawee, the Tuscumbia Banking Company, with the endorsement thereon : "For collection and return to the Bank of Commerce, Memphis, Tenn. J. A. Ombrey, Cashier." On the the 6th of June, the Banking Company received the check, and also another check drawn by another person, and the cashier filled up a check of the company on the United States National Bank of New York City, payable to the order of the Bank of Commerce, for the sum of $186.17, the amount of the two drafts the bank had remitted, but laid it aside and did not forward it until the 9th June, in accordance with the instructions of the president of the company. This check was promptly forwarded by the Bank of Commerce, for collection, and was duly presented, and protested for non-payment. In consequence of inquiry by letter from the plaintiffs, the letter bearing date June 7th, the defendant made inquiry of the Banking Company as to the payment of the check, and was informed by the cashier that it had been paid ; and the cashier then stamping thereon the words : "Paid June 6th, 1893, Tuscumbia, Ala.", delivered it to the defendant ; but there was no payment of it, otherwise than by the check on New York, which the cashier, though he had filled it up, did not forward until the 9th of June. The Banking Company, at no time after the check of the defendant was received by it, could have paid it in money, or otherwise than by exchange on New York, which the cashier had been instructed by the president not to issue before the 9th of June. The Banking Company was of good repute for solvency, until its suspension on the 8th of June, though the fact was that it was insolvent on or before the 1st of June, and has so continued. On the 1st of June, 1893, the defendant deposited with the Banking Company $65.10, but drew thereon two checks, the one for $46 10, and the other for $31.40, which were paid June 3rd, the day the check remitted the plaintiffs bore date. On the 5th of June he made another deposit of $139., which was to his credit when the Banking Company received the check from the Bank of Commerce.

The taking of a bill, or note, or check, for a pre-existing debt, without more, is not payment or satisfaction. The intendment or implication of law is that it is to op-

[Lowenstein & Bros. v. Bresler.]

erate as payment only in the event that it is paid; as to a check that it is *cashed*. 2 Dan. Neg. Ins. § 1623; 2 Morse on Banks, § 543; 1 Brick. Dig. 287, §§ 501–04. If insisted on as payment, the burden of proof rests on the party making the insistence, and he must repel the legal intendment or implication by evidence as clear and satisfactory as is essential to establish the payment or satisfaction of an admitted debt or demand. *Whiteley v. Dunham Lumber Co.*, 89 Ala. 493. The evidence is not consistent with any reasonable hypothesis that the check was accepted by the plaintiffs in satisfaction of the indebtedness of the defendant; it is consistent with no other hypothesis than that it was received as a conditional payment; was not to operate a satisfaction of the pre-existing indebtedness of the defendant unless it was paid on due presentment.

The plaintiffs, having received the check, were under the duty to defendant of making due presentment of it for payment, and, if not paid, of giving due notice of its dishonor. *Laches* in the performance of this duty, resulting in loss or damage to the defendant, to the extent of such loss or damage, would operate a satisfaction of the original indebtedness. But if there was not loss or damage, the laches would not be material. 2 Morse on Banks, §§ 543–44; 2 Dan. Neg. Ins. §§ 1587–88.

It may be, the drawee of a check is not a suitable agent to be intrusted with its collection; and it may be, that the Bank of Commerce, in selecting the Banking Company as the agent to collect the check and to remit the collection, rendered itself liable to the plaintiffs for whatever of loss might result to them from the unsuitable selection. The proposition is supported by the authorities, to which we have been referred. Morse on Banks, § 236; *Drovers' Nat. Bank v. Anglo-Am. Packing Co.*, 117 Ill. 110; (S. C. 57 Am. Rep. 855;) *Mer. Nat. Bk. v. Goodman*, 109 Pa. St. 422; (s. c. 58 Am. Rep. 728); *Fifth Nat. Bank v. Ashforth*, 123 Pa. St. 212. If this were a suit between the plaintiffs and the Bank of Commerce, founded on the averments of a want of care and diligence in intrusting the check to the payee for collection, the measure of recovery would be the actual loss the plaintiffs had suffered. 1 Dan. Neg. Ins. § 329; 1 Morse on Banks, § 252. Conceding that a payee is not a proper agent to be intrusted with the collection of a check, in-

[Lowenstein & Bros. v. Bresler.]

trusting it to him for the mere purpose of collection cannot operate its extinguishment or payment. It merely devolves on the payee, the duty and liability of an agent, in addition to the duty of payment if he has funds of the drawer in his hands. Dereliction of duty as the agent would not relieve from the duty of making payment, and, unless the drawer has suffered injury from whatever of delinquency there may have been as agent, it is not for him to inquire whether the agent was suitable or unsuitable.

We think it is shown affirmatively by the evidence that the defendant suffered no injury from the selection of the Banking Company as the agent for the collection of the check. When the check was drawn he had no funds in the hands of the Banking Company to meet it. The small deposit he had made a few days previously had been exhausted, and his account overdrawn. It was not till two days after (the day the check was received in Memphis by the plaintiffs) that he had made an additional deposit, insufficient to meet the check, when it might be presented; and this was the condition of his account when the Banking Company suspended, and during all the time the check was in its hands. The Banking Company was under no duty as the drawee to make a partial payment of the check, and, as agent of the payee, it was not within the scope of its authority or duty to receive such payment.—2 Morse on Banks, § 446; Boone on Banking, § 179. Mr. Morse observes that whether or not a bank would be justified in making partial payment of a check may be questioned, and there is no authority on the point, and that banks would not often try to exercise such a right. Independent of this consideration, it is shown that at no time after the check reached the Banking Company would payment of it in money have been made, or anything tendered or offered in payment than exchange on New York, which could not have been issued earlier than the 9th of June, the day after its suspension and its insolvency became known. The check which had been filled up, and which did not leave the possession of the Banking Company until the 9th of June, was of no obligation on the company until that day; so long as it remained in the possession of the company, it was without obligation or validity. The stamping of the check

[Lowenstein & Bros. v. Bresler.]

as paid, and antedating the stamp, would be a fraud upon the plaintiffs, if recognized as of any force, as the representation to the defendant that the check had been paid was a fraudulent misrepresentation; but from it no injury resulted to him. The check had not been paid, nor could payment of it have been made if any other agent had been selected to present it and demand payment. The defendant had not in the hands of the drawee funds sufficient to meet it; and if the drawee would have made a partial payment, without special authority, the existence of which is not to be presumed, the agent could not have accepted it. It may be inferred, from the prior course of dealing, the defendant expected the drawee to pay the check, though he had not funds sufficient to meet it. Such an expectation may or may not have been reasonable. There is no evidence that such payment had been arranged for; the defendant knew of the absence of the president of the bank, and there is no evidence the cashier had authority to make such payment, or to suffer the defendant to overdraw his account, thereby becoming a debtor to the company.— 1 Morse on Banks, § 357. When he accepted the check as paid, he must be taken to have known that it was not, and could not be, paid in full, unless the company made him an irregular loan, and to have known that without special authority the Banking Company, as agent, could not accept a partial payment. In addition, the fact remains that at no time, while the check was in possession of the Banking Company, would payment in money have been made, or anything offered or tendered in payment than exchange on New York, which, whether the Banking Company be regarded as the agent of the Bank of Commerce only, or as agents of the plaintiffs as well, it was without authority to accept. The defendant is entitled to stand in the attitude in which he would have stood if an agent of unquestioned suitableness had been selected for the collection of the check. This is the extent of his right. And if such agent had been selected, no degree of diligence, under the evidence, would have resulted in the payment of the check. If *laches* could be imputed to the plaintiffs, it is without corresponding injury to the defendant.

The judgment must be reversed, and a judgment rendered for the plaintiffs for the sum of $143.47, with the

interest thereon to this day, from the 3rd of June, 1893, and the defendant must pay the costs in the Circuit Court, and the costs of the appeal.