FIRST NATIONAL BANK OF CHICAGO *v.* CITIZENS' SAVINGS
BANK OF DETROIT.

1. BANKS AND BANKING—FORWARDING COLLECTIONS—NEGLIGENCE.
   In the absence of instructions to do so, it is negligence for a
   bank to which a certificate has been intrusted for collection
   to send it direct to the drawer; and such negligence makes
   the sender liable for any loss resulting.[1]

2. SAME.
   A bank sent a certificate of deposit, issued by a bank in B., to a
   bank in D. for collection, with the statement: "We note you
   have a correspondent at B.   Please collect at your best rate
   of exchange."   The only bank at B. with which the D. bank
   could have corresponded was the one which drew the certifi-
   cate, which fact was known to the forwarding bank.   The
   D. bank believed its correspondent to be entirely solvent, and,
   upon receipt of the certificate, forwarded it direct to such
   bank for collection.   The bank at B. failed without paying
   the certificate.   *Held,* that the instructions to the D. bank
   relieved it of a charge of negligence in forwarding the certifi-
   cate direct to the drawer.

Error to Wayne; Lillibridge, J.   Submitted February
2, 1900.   Decided March 13, 1900.

*Assumpsit* by the First National Bank of Chicago
against the Citizens' Savings Bank of Detroit to recover

---

[1] As to sending checks directly to drawee bank, see note to *Ander-
son* v. *Rodgers,* (Kan.) 27 L. R. A. 248.

the amount of a certificate of deposit sent to defendant for collection, and claimed to have been lost through defendant's negligence.   From a judgment for plaintiff on verdict directed by the court, defendant brings error.   Reversed.

*Barbour & Rexford*, for appellant.

*Bowen, Douglas & Whiting*, for appellee.

Long, J.   On September 6, 1898, the plaintiff bank received for collection from the National Bank of California, at Los Angeles, a certificate of deposit for $1,650, and interest thereon, issued to the order of J. R. Wallace by D. F. Parsons, a private banker at Burr Oak, Mich., under date of February 2, 1898.   The certificate was indorsed and made payable by Wallace to the order of the Bank of Whittier, Cal., by it to the National Bank of California, and by it to the First National Bank of Chicago.   On September 6th, the day of its receipt, the First National Bank of Chicago indorsed and made it payable to the order of the defendant bank, and forwarded it by mail to that bank at Detroit, with the following instructions:

"The First National Bank of Chicago.
"Chicago, Ill., Sept. 6, 1898.
"Citizens' Savings Bank,
"Detroit, Mich.
"*Dear Sir:*   I inclose items as per statement below for collection and returns.
"Yours respectfully,
"R. J. Street, Cashier.
"Protest all paper unless otherwise instructed.
"Burr Oak, 1,650.00 and Int.
38.50
—————
1,688.50
"Telegraph if not honored (rubber-stamped).
"Do not hold any of our collections after due for any reason whatever, except upon special instructions from us. Return at once if not paid."

Accompanying the above letter, and pinned to the certificate of deposit, there was a red slip, as follows:

"Citizens' Savings Bank,
            "Detroit, Mich.:
    "We send this C–D for $1,650.00 and Int. to you for collection, as we note that you have a correspondent at Burr Oak, Mich.    Please collect for us at your best rate of exchange, and oblige,
                        "First National Bank,
                            "A.    Chicago.
"9–6–'98.
    "Kindly take this ticket off before forwarding to Burr Oak."

Also accompanying the certificate, and pinned to it, were two slips, of which the following are copies:

"608.
    "Telegraph if not honored.    If telegraphing, communicate only with the First National Bank of Chicago, Ill. (giving date of their indorsement stamp), who will give instructions direct."

"First National Bank,
            "Chicago.
    "Collection.    No. 8.
    "Acc't Nat'l Bank of Cal.,
            "Los Angeles, Cal.
    "Date, Sept. 6, 1898.
    "Burr Oak, $1,650.
    "Int.,
    "T. N. P.
    "8–3.
    "Do not write or mark or stamp on this ticket.
    "Protest.
    "Return promptly if not paid."

The agent of the First National Bank of Chicago, who forwarded the certificate to defendant, testified on cross-examination that:

"The certificate was sent to the defendant bank,—a bank, as a rule, we never send anything to.   We sent it to them for the simple reason that we presumed that they knew all about this D. F. Parsons, having had his account for several years, and we didn't know anything about

him. He was a private banker in Burr Oak, Mich. I had sent items to Parsons for a number of years previous to this,—small items; but I had never sent him as much money as that. I had no sufficient knowledge of him to send him more.

" *Q.* This red ticket states: ' We note you have a correspondent at Burr Oak.' Do you know who that correspondent was that you noted at that time?

"*A.* There being only one bank at Burr Oak, there could not be any question about it. He was D. F. Parsons."

It appears that the defendant bank, on receipt of the certificate of deposit from plaintiff, which was September 7, 1898, sent it forward to D. F. Parsons, Burr Oak, Mich., stating that it was inclosed for collection, and asking him to report promptly. Parsons received this certificate, and on the 12th of September handed it to his clerk, and told him to give the Citizens' Savings Bank of Detroit credit for it. The clerk testified that, according to the books of D. F. Parsons, there was a balance in the Citizens' Savings Bank due Mr. Parsons of about $28,000. The clerk testified, further, that it was the custom of business that when the Citizens' Savings Bank sent collections to Mr. Parsons, if it was a certificate, they merely gave the bank credit on the books; if it was a check or draft for collection, they would collect it before they gave credit; that business had been conducted in this way for over five years. The witness further testified:

"We would remit to the Citizens' Savings Bank every day, or twice a day, or once in two or three days. If our books showed a balance to the Citizens' Savings Bank in our favor, we would remit just the same. We would not remit to the Citizens' Savings Bank for a draft or check drawn on our bank. The Citizens' Savings Bank had never sent anything on our bank for collection before that was drawn on us, and I didn't notice this was until afterwards. My father made an assignment for the benefit of creditors on the night of the 13th of September, 1898. Mr. Himebaugh, the assignee, has the statement the Citizens' Savings Bank rendered. On September 15, 1898, I did not know anything about my father's indebtedness to

the Citizens' Savings Bank. What I have learned about it since is what has been told me. Within ten days or two weeks after his assignment, my father left Burr Oak, and does not live there now."

The cashier of defendant bank testified that he received this certificate of deposit on September 7th, and on the same day he forwarded it, on regular collection letter-head, to Parsons, with instructions to remit. The witness was then asked: "*Q.* What construction did you place upon Exhibit 3?" (Exhibit 3 is the letter to the defendant bank in which it was said: "We send this C–D for $1,650.00 and Int. to you for collection, as we note that you have a correspondent at Burr Oak, Mich.") This was objected to, and objection sustained. "*Q.* How did you regard Mr. Parsons at that time financially?" This was objected to; and the court said:

"It seems to me that this is not the point. If they thought that he was responsible, didn't they assume the risk? Here is a note one of us has made for a large amount. We all know the usual practice of sending a note for collection is not to send it to the maker of the note. While in a good many instances it would be safe to send a note to the maker of it, does not the bank always take the chances, as a matter of law?

"*Counsel for Defendant:* It does unless its instructions are to the contrary. I do not claim here without instructions we were justified in sending this to Parsons; but what I claim is the instructions were positive to send it to him, and I wish to show that Mr. Tillotson [the cashier of defendant bank] so construed it, and that was his honest construction of the memorandum. Further, we have a letter from the First National Bank of Chicago in which they acknowledge that to be the construction.

"*The Court:* I have ruled, in effect, that that memorandum is not susceptible of that construction. You have an exception to that.

"*Counsel:* Your honor holds that that is not an instruction to the Citizens' Savings Bank to send it direct to Parsons?

"*The Court:* Yes."

The defendant bank, not having heard from Parsons, on the 12th of September wrote him to send funds sufficient

to meet the certificate.   Nothing further was heard from Parsons on the subject.   He failed and left the State, and his estate, as reported by his son, was not worth eight cents on the dollar.

The cashier of defendant bank was interrogated further in reference to his good faith in sending the certificate direct to Parsons, and the testimony ruled out.   He further testified:

"There was no arrangement between our bank and him by which he was authorized, instead of sending currency direct to our bank, to give the bank credit.   That would not be allowed any more than we would pay his check if he did not have the money to his credit in our bank.   I first learned that he was insolvent, or that his credit was not good, on September 15th.   On September 7th, when this collection was received from Chicago, Parsons was owing our bank $4,000."

Some considerable correspondence was had between the plaintiff and defendant banks in reference to the matter. On September 21st the plaintiff wrote the defendant as follows:

"Chicago, Sept. 21, 1898.
"Citizens' Savings Bank,
          "Detroit, Michigan.
"*Gentlemen:* We have your favor of the 19th inst. In sending the item to you as we did, we suppose that it was intended to have the advantage of your knowledge of Parsons.   We were aware that his was the only bank at Burr Oak, but we thought that you would know enough about him not to send to him an item on himself for $1,650, unless you had and were warranted in having considerable confidence in him.   You say nothing on this point. Kindly let us know how you regarded Parsons.   Our correspondent in Los Angeles is inquiring sharply of us to see if there is not some responsibility 'somewhere' for this loss.                    Yours truly,
                    "R. J. Street, Cas. *O. P.*"

The defendant replied to this letter as follows:

"Detroit, Sept. 23d, '98.
"R. J. Street, Cashier,
          "Chicago, Ill.
"*Dear Sir:*   In answer to yours of the 21st inst., re-

garding the certificate sent to D. F. Parsons, of Burr Oak, who recently failed, I would say that we have had entire confidence in Mr. Parsons' integrity and ability to pay. We had heard nothing detrimental to his financial standing. His rating is from $30,000 to $35,000 in Dun's, and we were at the time carrying $4,000 of loans to him, which was less than the orginal amount loaned him, and he had always been business-like in his dealings with us. If he had wanted to borrow money, we should have loaned it to him, and we had no intimation whatever that there was anything wrong there. I have requested the assignee to return the certificate, unless he would remit for same.

"Yours respectfully,

"FRANK F. TILLOTSON, Cashier."

The certificate was not protested, and the plaintiff bank was not notified of its nonpayment until September 15th.

The declaration by which the suit was commenced counts upon the negligence of the defendant bank in sending the certificate to Parsons for collection, and also upon the negligence of defendant in not notifying plaintiff of its noncollection until September 15th; also, for not protesting the certificate for nonpayment. The common counts in *assumpsit* are added. The court directed the jury to return a verdict in favor of the plaintiff for the amount of the certificate and interest. Counsel asked the court to direct the verdict in favor of defendant. This was refused, and the refusal constitutes the principal assignment of error.

The main question in the case, and in fact about the only question, is whether the defendant was justified in sending the certificate directly to Parsons for collection. It is conceded by counsel for defendant that, in the absence of instructions to do so, it is negligence to send the collection directly to the drawer, and such negligence makes the sender liable for any loss resulting. We think this rule is sustained by the authorities: *Merchants' Nat. Bank* v. *Goodman*, 109 Pa. St. 428 (58 Am. Rep. 728); *Drovers' Nat. Bank* v. *Provision Co.*, 117 Ill. 100 (7 N. E. 601, 57 Am. Rep. 855); *German Nat. Bank* v. *Burns*, 12 Colo. 539 (21 Pac. 714, 13 Am. St. Rep. 247); *First Nat. Bank of Evansville* v. *Fourth Nat. Bank of Louisville*, 6 C. C. A. 183, 56 Fed. 967.

But it is contended that the instructions from plaintiff to defendant were to send the certificate of deposit directly to Parsons for collection; that this is to be gathered from the terms of the letter; that the direction, "collect at your best rate of exchange," implies this, from the fact that there was no other bank at Burr Oak. We think in this defendant's counsel are correct. Any other mode of collection would not have been in compliance with instructions. The defendant could not send the certificate through the express company, as it could not be collected at the best rate of exchange in that way. The further direction, "Kindly take this ticket off before forwarding to Burr Oak," is consistent only with the idea that the collection was to be sent directly to the Parsons bank. The plaintiff, in its letter forwarding the certificate, calls attention to the fact that the defendant has a correspondent at Burr Oak, and then says: "Please collect at best rate of exchange." Under these circumstances, we think the defendant was justified in so sending the collection, especially as Parsons had a rating with R. G. Dun & Co. of from $30,000 to $35,000, and the defendant's officers had entire confidence in him. But, aside from this, it is quite evident from the correspondence following that the plaintiff construed its own letter to mean that defendant was instructed to send the collection direct to Parsons. In the letter of plaintiff of September 16th the inquiry is made: "State whether the item was sent direct to Parsons, or through some other agency at Burr Oak." On the 19th the defendant wrote plaintiff that it had been sent direct to Parsons, and on the 21st the letter is written by plaintiff heretofore quoted. In that letter it was said:

"In sending the item to you as we did, we suppose that it was intended to have the advantage of your knowledge of Parsons. We were aware that his was the only bank at Burr Oak, but we thought that you would know enough about him not to send to him an item on himself for $1,650, unless you had and were warranted in having considerable confidence in him."

In other words, it is apparent that the very purpose of the item's being sent to defendant was because it had knowledge of Parsons' responsibility, and that it could be collected by defendant at better rates than plaintiff could collect it for from Chicago. As Parsons had the only bank at Burr Oak, it must have been anticipated by plaintiff that defendant would, if it believed Parsons responsible, send the collection directly to him, and thus obtain the best rate of exchange. No question is made but that the defendant acted in the utmost good faith, believing that Parsons was perfectly responsible. The collection was sent Parsons on the 7th. The 10th, being Saturday, was a half holiday. On Monday, the 12th, the defendant, not having heard from Parsons, made inquiry about the collection, and learned that he had failed. The plaintiff was notified immediately. We think the defendant was not negligent in any particular; and the court below should have directed the verdict in favor of defendant.

The judgment must be reversed, and a new trial ordered.

The other Justices concurred.