(77 South. 43)

**BLOUNT COUNTY BANK v. HARRIS.**
(6 Div. 644.)

(Supreme Court of Alabama. Nov. 29, 1917.)

1. BILLS AND NOTES ☞509—FALSE REPRESENTATION—ACTION BY INDORSEE—NOTICE—AGENCY—EVIDENCE.

Where a corporation, promoting an additional issue of stock to place a plant in defendant's town, sent an agent to her town, who made representations as to the company in a speech at a town meeting at which plaintiff bank's president was present, it was proper to admit in evidence, in an action on a note for a share of stock, false representations and agency of several townsmen, in substance the same as the speaker's, where they had sought defendant out and prevailed upon her to take a share of stock and to sign a note in the handwriting of the speaker, and the representations in the speech of the speaker were also admissible to show that the bank which had taken over the note and had given in exchange a certificate of deposit due after maturity of the note, had notice of false representations and lack of consideration, and all other collective collateral facts of the promotion of the issue were admissible.

2. PRINCIPAL AND AGENT ☞19—FALSE REPRESENTATIONS.

In an action by an assignee on a note for a worthless share of stock, the defense being false representations in procuring the note, it was necessary to show that the persons so procuring the note represented the corporation.

3. PRINCIPAL AND AGENT ☞177(1)—KNOWLEDGE OF AGENT—PRESUMPTIONS.

Although a principal is not bound by knowledge of an agent acquired prior to the agency, or knowledge acquired out of the scope of the agency, yet there is a rebuttable presumption that such an agent informs his principal of all material facts, no matter when acquired, bearing on the subject-matter of his agency.

4. PRINCIPAL AND AGENT ☞193—KNOWLEDGE OF AGENT—NOTICE OF LACK OF CONSIDERATION—QUESTIONS FOR JURY.

In an action on a note by an indorsee, evidence *held* to take to the jury the question of notice of lack of consideration by reason of knowledge of an agent gained out of the course of his employment.

5. EXCEPTIONS, BILL OF ☞26 — EQUIVOCAL RECITALS.

Where recitals in a bill of exceptions are equivocal, they must be interpreted against the exceptor.

6. TRIAL ☞256(2) — MISLEADING INSTRUCTIONS — DUTY TO REQUEST EXPLANATORY INSTRUCTIONS.

Where charges contain misleading tendencies in consequence of unfavorable interpretation of their terms, it is the duty of a party complaining of them to request explanatory instructions.

7. BILLS AND NOTES ☞538(4)—INSTRUCTIONS—NOTICE TO PURCHASER — MISLEADING CHARGES.

A charge that, if a corporation agreed to deliver a share of stock and failed to do so, and if plaintiff, suing as holder of defendant's note for the stock, had knowledge of such breach, or had knowledge which, if followed up, would have resulted in such knowledge, your verdict should be for defendant, *held* not misleading under the evidence.

Appeal from Circuit Court, Blount County; W. W. Haralson, Judge.

Assumpsit by the Blount County Bank against Mrs. Susie Harris. Judgment for defendant, and plaintiff appeals. Transferred from Court of Appeals, under Acts 1911, p. 450, § 6. Affirmed.

The charge given by defendant and referred to in the opinion is as follows:

The court charges the jury that if you are reasonably satisfied from the evidence in this case that the Southern Pickle Company agreed to issue and deliver one share of the capital stock of said company for the note here sued on, and failed to so deliver said property to defendant, and if plaintiff had knowledge of said breach, or had knowledge of facts which, if followed up, would have resulted in such knowledge, then your verdict should be for defendant.

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Ward & Weaver, of Oneonta, for appellant.    Russell & Johnson, of Oneonta, for appellee.

McCLELLAN, J. This is an action by the appellant bank against the maker (appellee) of a promissory note, executed to the Southern Pickle Company, a corporation, to purchase one share of its capital stock, and transferred before its maturity to the bank. There are no assignments of error bringing into question any ruling on the pleadings. Neither the note nor any indorsement on it is reproduced anywhere in the transcript. The court below, in its instruction to the jury, reduced the issues tendered by the defendant's special pleas to these:   (a) Whether the consideration for the note failed because the certificate of stock was not delivered by the payee in the note in breach of the agreement to deliver the certificate to the payor promptly upon the execution of the note; (b) whether the note's execution and delivery was effectually induced by false or fraudulent representations as to the value and valuableness of the stock, made to the maker by representatives of the payee; whereas, according to the maker's claim, the stock was practically worthless. Through its special replication, in addition to a general traverse of the averments of these special pleas, the bank set up that it was an innocent purchaser, before maturity, for value and without notice, in due course of business, of the note sued on. The issues tendered by the averments of the special pleas, as well as by the averments of the replication, were under the conflicting evidence and inferences reasonably deducible from pertinent facts and circumstances shown by the evidence, due to be submitted to the jury, and were passed to the jury for decision. The assignments of error insisted on in the brief relate alone to rulings on the evidence and to the instruction of the jury. The review here will be confined to subjects of complaint asserted in the assignments of error insisted on in the brief for appellant.

[1] This note was executed and delivered by the defendant to Messrs. Cowden and Huffstutler after a conversation with her in which they discussed the sale and purchase of the stock by her. Manifestly what was there said by these gentlemen to her with reference to its value and valuableness was relevant to the issues raised by the special pleas.

[2] If the false representations set up in the special pleas were made to her by them, inducing her to execute the note to the Southern Pickle Company, it was further necessary to this feature of her defense that these persons should have been representatives of the Southern Pickle Company to effect the sale of the stock, the sale of which was being promoted, and to which corporation the note was to be and was made payable. The corporation could not, of course, be bound or prejudiced by any conduct or statement of theirs unless they had authority to represent it. The defendant undertook to sustain this feature of her case by evidence tending to show that one Henderson, an official of the corporation, came to Oneonta to promote and effect the sale of several thousand dollars of the stock, additional to that already outstanding, of the corporation, with the view to the construction and operation of a plant of a kind operated by the corporation at Cullman and other places; that he addressed a public meeting convened to consider the matter of such stock subscriptions, wherein he made statements similar, in substance to those charged in the special pleas to be false; that at this meeting a number of subscriptions to the stock were made, the purchasers giving their notes therefor; that Cowden and Huffstutler sought out the defendant and through the repetition, in substance, of statements of fact made by Henderson in his public address, secured her as a purchaser of one share of the stock, and the execution by her of the note in suit, which was in the handwriting of Henderson, to whom the note was delivered by them promptly upon its execution; that the note in suit, with the certificate of stock attached, was transferred outright at discount or conditionally negotiated by the payee to the plaintiff; that the bank gave therefor, before maturity, its certificate of deposit (a negotiable instrument [Bank v. Avant, 189 Ala. 418, 425, 66 South. 509; Armstrong v. Walker, Superintendent, 76 South. 280, ante, p. 364, present term]), payable after the note fell due; which certificate of deposit was either transferred by the corporation-payee to others and later paid, or was redelivered to the bank as collateral security for a loan to the corporation made after the defendant's note was executed and before its maturity; and, upon default of the corporation, the certificate was appropriated and its obligation extinguished; and that the pickle company subsequently became bankrupt.

There was no error in admitting testimony with reference to Henderson's activities at Oneonta in promotion of the sale of the additional shares of the stock of the company; nor in permitting testimony tending to show that Cowden and Huffstutler were representatives of the company in negotiating the sale of one share of the stock to the defendant. The defendant was due the liberty accorded her by the court below to bring under consideration all of the facts and circumstances pertaining to the promotion and negotiation of the sale of this share of stock to the defendant and her execution of the note therefor, together with any statements or representations made by Henderson, Cowden and Huffstutler about the sale thus effected.

[3] Notice to the plaintiff bank of the infirmities underlying the contract culminating in the note sued on was sought to be shown by the defendant through the presence of

Mr. Weaver, who was president of the plaintiff bank, at the public meeting where Henderson spoke, and where a number of subscription notes were given.

"By a long line of decisions, this court is thoroughly committed to the rule that knowledge acquired by an agent prior to his agency, or in regard to matters outside the line of his duty, or while pursuing his own or some other person's business, is not notice to his principal of such fact or facts, and is not binding upon him." Hall & Brown Woodworking Mach. Co. v. Haley Fur. & Mfg. Co., 174 Ala. 190, 196, 56 South. 726.

This rule is one of substantive law. Hall, etc., Co. v. Haley Co., supra. The establishment of a case within the purview of the rule may be effected by the visitation upon the evidence pertinent to the issue of the rebuttable evidential presumption, predicated of the agent's duty—

"to inform his principal of every material fact within his [i. e., the agent's] knowledge, no matter when acquired, bearing upon the subject-matter of his agency, which may affect the interests of his principal with respect thereto; and it will be presumed that he has discharged this duty." Hall, etc., Co. v. Haley Co., supra.

[4] The application of the rule of evidence just restated to the facts and circumstances disclosed by phases of the evidence operated to require the submission to the jury the decision of the question whether the plaintiff bank had knowledge or notice of the false representations asserted by the defendant, inducing her execution of the note, before or at the time the bank became the transferee of her note.

[5] The attempted exception to the action of the court, in, latterly, confining the testimony of the witness Self to a disclosure of a "custom" observed by the company or the bank with respect to notes taken by the company for stock of the additional issue in question, and assigned to the plaintiff bank, was and is ineffectual to present any matter of a prejudicial nature to the plaintiff. The recitals of the bill of exceptions in this particular are, at the very least, equivocal. Where a bill's recitals are equivocal, they must be interpreted against the exceptor. Dickens' Case, 142 Ala. 51, 39 South. 14, 110 Am. St. Rep. 17; Dowling's Case, 151 La. 133, 44 South. 403; Hedden v. Wefel, 13 Ala. App. 488, 69 South. 225, collecting other decisions of this court on the point. When the presently pertinent recitals are interpreted according to this rule it is clear that the trial court committed no error prejudicial to the appellant (plaintiff) in denying to Self's testimony its major effect, affirmatively restricting its probative force to a single feature, viz.: To show the "custom" prevailing with respect to notes taken in the promotion of the branch enterprise to construct and operate which this additional stock issue was intended to afford the requisite means. However, if the exception should be regarded as fully efficient, no prejudicial error could, under the evidence, have resulted to the appellant; since the undisputed proof was that the share of stock was not delivered to the defendant. There was no evidence of affirmative obligation on defendant's part to "demand" the delivery of the stock from the bank; though there was testimony tending to show, quite differently, that had the defendant demanded the certificate from the bank (not the company), it would have been delivered to her. No reversal could be predicated of this cause of complaint.

[6] There are two assignments assailing, separately, excerpts from the oral charge of the court. When read in their respectively appropriate connections, as well as in their proper relation to the whole deliverance, and with due reference to the issues and evidence, we can see no real fault in these excerpts. If, perchance, one, or both, of them possessed misleading tendencies in consequence of unfavorable interpretation of their terms, the plaintiff should have requested explanatory instructions, to the end of removing all possible doubt.

[7] Under the facts hypothesized in the single charge given the jury at the instance of the defendant, when referred, as must be done, to the evidence before the jury, the charge had no affirmative fault. The criticism in the brief for appellant is that the charge "was misleading in view of the peculiar facts of this case." A careful consideration of the charge and of the evidence precludes the acceptance of this criticism.

The errors assigned and pressed here are without merit. The judgment is due to be affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.