139 So. 421

## MARX & CO. v. BANKERS' CREDIT LIFE INS. CO.
### 6 Div. 783.

Supreme Court of Alabama.
Oct. 8, 1931.

Rehearing Denied Jan. 28, 1932.

Harsh & Harsh, of Birmingham, for appellee.

Douglas Arant, Luther B. Bewley, and Bradley, Baldwin, All & White, all of Birmingham, for appellant.

**FOSTER, J.**

The opinion in our case of Stanley v. Green, 205 Ala. 225, 87 So. 356, we think, is clear to the effect that under the circumstances there disclosed the check of the depositor had not been paid. As affecting the one question of whether the check was paid, the facts of that case are the same in material respects as those of this one. We think that the opinion is well supported, and we have no disposition to depart from it, nor does it need further discussion.

So on the facts stated in counts 3 and 4 and shown in the evidence, we feel justified in the position that the check which this plaintiff gave to this defendant on the Bank of Ensley was not paid. But that conclusion does not determine the rights of plaintiff against defendant, though it does settle the fact that plaintiff has a claim against the Bank of Ensley or its liquidating agent for the full amount of its deposit including the amount of that check, though it had been marked paid and charged to its account.

Our judgment is that the case of Stanley v. Green, supra, is conclusive against the right of recovery on counts 3 and 4, and that demurrer to those counts should be sustained. They are based upon the statement that the check was paid, whereas they show otherwise as a legal conclusion from the facts alleged. In that case there was no place for the question of whether the payee of the check, or its agent, was negligent in the matter of its presentation, and if so what was the result as between the drawer of the check and its payee.

But negligence of defendant is attempted to be set up in count 5, and is involved in the common counts 1 and 2. Count 5 charges a negligent failure to collect *cash* for said check. This allegation is added to count 4, thereby making it count 5. Both counts 4 and 5 therefore allege that plaintiff refunded to defendant the amount of the check, in ignorance of the fact that its original check "had in fact been presented to said Bank of Ensley and charged to the account of plaintiff by said Bank of Ensley and a check or draft issued by said Bank of Ensley to defendant or its said agent," and upon the assurance by defendant that said check "had not been paid." Upon the basis of such facts plaintiff alleged in count 5 that it was under no legal duty to execute and deliver to defendant its said second check as a refund, and that there was no valuable consideration for it. While count 5 alleges a negligent failure to "collect cash" for said check, when added to the allegations of count 4, it shows that in that count, as in the others, it maintains that the first check was in fact paid. If paid as a legal conclusion, it would be immaterial whether in cash or otherwise. But assuming that count 5 is consistent with the position that the check was not paid, due to defendant's negligence, there is no allegation of damage by reason of the neglect, that plaintiff has thereby lost the whole or any definite part of the amount of such original check either by reason of the failure of the Bank of Ensley or

other circumstance due to such negligence. We think count 5 is subject to the demurrer.

■ But in respect to the common counts the following observations seem to us to be pertinent. It is undoubtedly the true rule that a payee of a check is under the duty to the drawer to make due presentment, and laches in the performance of this duty resulting in loss or damage to the drawer, to the extent of such loss or damage would operate a satisfaction of the original debt. Lowenstein v. Bresler, 109 Ala. 326, 19 So. 860; Hendricks v. Jefferson County Sav. Bank, 153 Ala. 636, 45 So. 136, 14 L. R. A. (N. S.) 686; Morris v. Eufaula Nat. Bank, 106 Ala. 383, 18 So. 11; Section 9204, Code.

But under such circumstances, it is said in Hendricks v. Jefferson County Sav. Bank, supra, page 642 of 153 Ala., 45 So. 136, 137, that: "In accordance with the weight of authority, and especially in view of the positive position taken by our own court, we hold that the measure of damages is the actual loss sustained, and that it is a part of the plaintiff's case to allege and prove the amount of loss."

And in Jefferson County Sav. Bank v. Hendrix, 147 Ala. 675, 676, 39 So. 295, 296, 1 L. R. A. (N. S.) 246, it is said: "But the damages recoverable are by no means necessarily the amount of the check. It by no means follows from the negligent failure of the bank to collect the check, or its negligent failure to give the owner timely notice of the dishonor of the paper, whereby he is denied fruitful opportunity to collect it himself, that the owner loses the demand for which the check was given, or even any part of it. To the contrary, it is frequently, if not generally, true that the owner of the paper secures some part or all of the debt for which it was given in some other way, as by subsequent voluntary payment by or suit against the drawee bank when it is solvent, or by dividends upon its being wound up as an insolvent concern. . It will, therefore, not suffice for the owner to hail the collector bank into court and implead that 'you took this check to collect it. You did not do your duty in that regard, and of consequence the check was not collected. Therefore the check is yours, and the amount of it in money is mine, and in your hands for me, and you must pay me that amount.' It does not follow from the facts the owner thus puts forward that the bank is liable to the extent he seeks to hold it, or to any extent in fact."

It is also said in Lowenstein v. Bresler, supra, page 329 of 109 Ala., 19 So. 860, 861, "But if there was no loss or damage, the laches would not be material."

■ The first and second counts of the complaint are the common counts. They may be sustained upon the theory, if established by the proof, that the amount plaintiff paid to defendant by its second check was by mistake of fact and without consideration to the extent that its debt to defendant was satisfied by the loss or damage plaintiff sustained as a result of defendant's negligence. Lowenstein v. Bresler, supra; Traweek v. Hagler, 199 Ala. 664, 75 So. 152. And, therefore, plaintiff can recover on those counts, if loss or damage is shown by a failure of duty in the collection of the check, and that when plaintiff refunded the amount to defendant it had no notice of such breach of duty, but paid it under mistake.

A material question of fact is whether the evidence showed a lack of duty in the presentation of the check, which resulted in plaintiff's damage in some definite amount. Birmingham Trust & Savings Company was a banking institution located in the downtown business district of Birmingham. It was several miles distant from, but in the same municipal corporation as. the Bank of Ensley, which was to some extent another business community altogether, and what is known as a suburban business center, connected by street railway, telephone, and mail service. The check in question was during the banking hours of January 7, 1930, executed and delivered to defendant, whose place of business does not seem to be definitely shown, but counsel seem to assume it to be also in the downtown section of Birmingham, and not in Ensley. On that day defendant deposited the check with the Birmingham Trust & Savings Company for collection. Bank of Ensley was not a member of the Birmingham Clearing House, and that bank was in the habit of collecting checks which it received on the Bank of Ensley by mailing them to that bank, which in payment sent its check on some other bank. Birmingham Trust & Savings Company treated and called the Bank of Ensley as an out of town bank. And on the same day on which it received the check for collection, it forwarded by mail the same to Bank of Ensley for collection and payment, along with a large number of other checks. On the morning of January 11th, Birmingham Trust & Savings Company received through the mail, by envelope postmarked January 10th, a check of Bank of Ensley on American Traders' National Bank to cover those checks which had been sent for payment. On that morning the check was presented to American Traders' National Bank for payment at the clearing house, and payment declined. Bank of Ensley did not have sufficient funds with American Traders' National Bank to meet it, and after the close of business on the day before, to wit, January 10th, and during the night, its directors had passed a resolution placing its affairs with the banking department of the state for liquidation. It was thereupon taken over about 8 a. m. January 11th before the check was presented for payment, and therefore it would not have been paid if there had been

sufficient funds to cover it. Plaintiff's check on Bank of Ensley was cut and stamped, "Paid, January 9th," and charged to plaintiff's account January 10, 1930.

The first inquiry therefore in this connection is whether defendant by its agent Birmingham Trust & Savings Company exercised due care by mailing the ·check direct to Bank of Ensley rather than to send it to that bank for cash payment over the counter, or to another bank in Ensley for collection. Defendant in various ways offered to prove that it was the ordinary course and general custom of banks in Birmingham who were members of the clearing house during that time to send for collection by mail direct to Bank of Ensley and other suburban banks checks which they received upon those banks, and that they remitted by exchange and not by cash. The court declined to permit such proof, and defendant excepted. There was evidence that there was one other and probably more banks in the Ensley district at the time.

On January 8th and 9th Bank of Ensley had in its banking house ample cash to pay the check in question had it been presented there for cash payment.

■ By Act of September 30, 1919, p. 856, now section 9222, Code, a bank receiving for collection a check upon another bank "located in another city or town" may forward the check direct to the bank on which it is drawn, and it is provided that such method of handling its collection "shall be deemed due diligence." Under its express provisions it is due diligence thus to forward the check for payment if the drawee bank is "located in another city or town." The statute does not affect the duty of the collecting bank if such drawee bank is not thus located. Dudley v. Phenix-Girard Bank, 216 Ala. 591, 114 So. 188, 190. Without the operation of that statute our decisions hold that it was not ordinarily the exercise of due care to send·by mail to the drawee a check upon it for collection or payment. Farley Bank v. Pollock, 145 Ala. 321, 39 So. 612, 2 L. R. A. (N. S.) 194, 117 Am. St. Rep. 44, 8 Ann. Cas. 370; Lowenstein v. Bresler, supra; Jefferson County Savings Bank v. Hendrix, supra; 7 Corpus Juris, 615.

The court also held that a custom to that effect was unreasonable and bad. Farley Bank v. Pollock, supra.

■ Section 9204, Code, provides that a check must be presented for payment within a reasonable time after its issue, or the drawer will be discharged from liability thereon to the extent of the loss caused by the delay. In 1 Morse on Banks and Banking, § 421, it is said that at the latest the check should be presented for payment within banking hours on the day following the day of its delivery, if the bank on which it

is drawn be in the *same place* where the payee lives or does business; but if not in the same place the check must in the same period of time be put in due course for presentment by being sent by mail or deposited for collection with a banker according to the ordinary custom. This court has adopted substantially that language used by Mr. Morse. Morris v. Eufaula Nat. Bank, supra.

We note that in stating the rule the authorities use the word "place." We assume that the basis of this rule is expressed in our case of Dudley v. Phenix-Girard Bank, supra, that "banks accepting for collection drafts *upon out of town points*, more or less distant, for the accommodation of depositors, cannot be expected to dispatch one of its own officers or a special messenger to obtain payment of the bills. Dorchester Bank v. New England Bank, 1 Cush. (Mass.) 186. Banks may get some incidental benefit out of such collections, but the primary purport of such transactions is the accommodation of the depositor." The reasons thus expressed would not seem to make material the question of the corporate lines of cities and towns. Large cities often embrace many square miles of territory. In one such city there may be several large and complete business centers far removed from each other, which for all practical business purposes may be as separate and distinct as though they were separately incorporated; each with its own name and post office, containing all forms of business enterprise in a compact area.

The rule we have at hand is that of due diligence and not of corporate lines separating municipalities. We do not think therefore that a bank is in the *same place* as another, so as to demand presentment of a check at the business house of either, within this rule, if they are located in business centers so far removed as to make it unreasonable and an undue burden to dispatch a messenger with the check for presentment at such place of business, there being no clearing house jointly used by them for that purpose, but that under such circumstances the second alternative may be used, that is, that it may be sent by mail using due care, and according to the ordinary course of business, because the two banks are not thus in the same place. "Place," we think, is a relative term and depends upon the facts of each situation. If the two banks are not in the *same place*, the check may be forwarded by mail for presentment.

■ We have shown that without section 9222, Code, this could not be done by forwarding it to the drawee bank. But that provision permits this to be done if the drawee bank is "located in another city or town." We have taken pains to refer to the

rule as expressed, and its purpose, in order that we may try to arrive at a correct interpretation of the quoted words of the statute. We feel that in enacting the statute the Legislature must have intended it to apply to instances, where, on account of the distance between the banking centers, a reasonable and proper course of dealing between them would permit a presentment by mail. For certain purposes in our municipal law cities and towns refer to municipal corporations. Section 1743, Code. But "in its popular sense, a town is an aggregation of houses so near to one another that the inhabitants may fairly be said to dwell together." 38 Cyc. 596.

For the purpose of accomplishing the relief evidently sought by section 9222, Code, could municipal corporate lines have had controlling influence upon the Legislature? For instance, Fairfield may not be a part of Birmingham, yet it may be incorporated and may lie so contiguous to Ensley as that there is nothing to show that it is not one continuous city. If municipal lines control, the statute would apply to Fairfield but not to Ensley. Likewise Homewood may be so situated and separately incorporated with its own business center, but without practical evidence of separation from Birmingham. The statute would thus apply to it, but not to Ensley, East Lake, North Birmingham, or some other suburb perhaps more remote from the main business center of Birmingham, and though each may be a town according to its popular sense, separately designated by name and post office. Was the statute thus intended? We think that taking it in connection with existing principles and its evident purpose it refers to the same situation as Morse and others do when they say that the banks are in the *same place*.

 We think, therefore, that all the relevant circumstances are admissible in evidence to determine that question, and that the customary and ordinary course of business in the banking districts of the two sections is admissible as a circumstance, not to change a fixed rule of law, but to determine if the two banks are in different places within the meaning of this rule. It follows that in our judgment the court committed reversible error in not permitting evidence of such custom.

 The principle which is the basis of the rule that a collecting bank cannot send the check by mail to the drawee bank, is that it "is certainly bound to select his subcollecting agents with judgment and care, and one of the first elements of care is to select a subagent who is not adversely interested in the subject-matter." Farley National Bank v. Pollock & Bernheimer, 145 Ala. 321, 39 So. 612, 613, 2 L. R. A. (N. S.) 194, 117 Am. St. Rep. 44, 8 Ann. Cas. 370, supra. But for such apparent breach of duty there can be no complaint if the drawer and holder have consented to that particular selection. First Nat. Bank v. First Nat. Bank, 127 Tenn. 205, 154 S. W. 965; Chicago First Nat. Bank v. Citizens' Savings Bank, 123 Mich. 336, 82 N. W. 66, 48 L. R. A. 583.

 The defendant, as holder of the check, consented to this method of handling it by the Birmingham Trust & Savings Company by express stipulation to that effect on the deposit slip issued on its receipt. This was, of course, not binding on plaintiff, nor did it affect plaintiff's rights against defendant.

The evidence shows that Sam C. King was vice president, cashier, and actively managing the business of Bank of Ensley, a member of its executive committee and board of directors; that he was treasurer of plaintiff corporation, and, as such, signed both checks given defendant in this transaction. One of them, which was not paid and whose presentment by mail defendant is charged with want of due care, was given on the Bank of Ensley as drawee. Mr. King was also a member of the executive committee and of the board of directors of plaintiff. The claim is made that due care was not observed by sending by mail to the drawee bank the check given by King as treasurer of plaintiff, though King was also the managing officer of that bank. The authorities hold that plaintiff could have expressly consented to such arrangement. The evidence is that King. "attended the meetings of the executive committee and as such he was participating in the direction of the financial affairs of the" plaintiff. But that he performed no other duties as treasurer than to sign checks, sometimes in plaintiff's office and sometimes in his office in the Ensley bank. So that can it be said as a matter of law that there could not be implied a consent by plaintiff through King in the scope of his authority as treasurer by reason of such close and intimate and important relations of King with both institutions. Certainly if King as an individual had drawn a check on himself as banker, the court could consistently hold that by such act he impliedly consented for it to be sent to his own bank for payment by mail if it could under the circumstances have been sent by mail to any bank for collection.

 But when the check was signed by King as treasurer of plaintiff, drawn on a bank of which King was the active managing officer, it is not unreasonable for the payee to assume that that bank was satisfactory to plaintiff as a collecting agent. We think that such a situation was one which should be considered in this case to determine if there was due care by plaintiff in selecting its collection agent, if the question is not controlled by section 9222, Code.

To justify a judgment for plaintiff the evidence should show that, at the time it gave its second check to defendant, it had no notice that defendant had not fulfilled its duty to use due care, but had caused the check to be sent by mail to the drawee Bank of Ensley for payment, if such is found to be a breach of duty. The only evidence of mistake relates to the payment of the check. Plaintiff in special pleading and evidence bases its right to recover upon the fact that the check was in fact paid, but relied upon the false statement of defendant that it was not paid, and that it had no notice that it was not paid. The evidence does not show, as we read it, that plaintiff had no notice that there was any want of due diligence in presenting the check for payment, or want of care as to the method of presenting it. On the other hand, appellant insists that because of the official connection of King with both the drawer and drawee, he had as a matter of law notice of the method of presentment to the drawee, and that such notice was likewise chargeable to plaintiff on account of his official connection with it. The evidence does not show that he had actual knowledge of such circumstances at the time he signed the second check to defendant. We do not think he is chargeable with actual knowledge of all the details of the bank's transactions, because he was its manager. If he did have such knowledge acquired as an officer of the bank, and not as an officer of plaintiff, it did not impute to plaintiff such notice as a matter of law, but at the time of executing the second check to defendant, that King had discharged his duty to plaintiff to give plaintiff such information is a rebuttable presumption. Hall & Brown v. Haley F. & M. Co., 174 Ala. 190, 202, 56 So. 726, L. R. A. 1918B, 924; Girard F. & M. Ins. Co. v. Gunn, 221 Ala. 654, 130 So. 180; Blount County Bank v. Harris, 200 Ala. 669, 77 So. 43.

But as there was no evidence that King had such notice in fact, there is no room for the application of such presumption. But mistake of fact is of the essence of plaintiff's right to recover for money had and received, and there is no evidence of such mistake, or want of knowledge by plaintiff.

We have also observed that loss and damage in a definite amount must be shown to justify a substantial recovery by plaintiff. The evidence shows that Bank of Ensley was at the time of trial in process of liquidation; that something would be paid to the depositors, but the amount was quite uncertain. From this circumstance it follows that plaintiff will not as a depositor in that bank lose the whole amount of the check which is still properly a part of its deposit account. Until the amount which plaintiff will receive from the Bank of Ensley in liquidation is ascertainable to a definite extent, the amount of its damage is not definite, though plaintiff may otherwise prove a right to recover upon a consideration of the principles which we have stated.

We do not think it necessary to treat the various assignments of error separately, but think that on another trial there will be no difficulty in shaping the rulings according to our views as we have expressed them.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.

## On Rehearing.

FOSTER, J.

We are now persuaded that the case of Stanley v. Green, supra, should not control on this appeal. There the question was between the depositor who drew the check and the drawee bank. The depositor was claiming that his check had not been paid in the transaction, and it did not stand in the right of the bank to assert otherwise, having given its worthless exchange for it.

We concede that there is a distinction between that case and one between the drawer of the check and its payee, in a transaction in which the payee accepted in payment something else than money, which proved to be worthless, or less in value than cash. Many authorities to that effect are cited in note 52 A. L. R. 995 et seq. See Nat. Com. Bank v. Miller, 77 Ala. 168, 54 Am. Rep. 50; 5 R. C. L. 498-9; Fed. Reserve Bank v. Malloy, 264 U. S. 160, 44 S. Ct. 296, 298, 68 L. Ed. 617, 31 A. L. R. 1261.

We also accept as true the further claim, supported by the same authorities, that when the payee or its agent negligently or voluntarily accepts payment of a check in some depreciated security or anything else than money, when it could then and there have had cash, the effect is a payment as between the drawer and payee, and the drawer's rights are not dependent upon a showing of loss otherwise.

The special counts were 3, 4, and 5. They all alleged as a conclusion that plaintiff's check was paid based upon the facts set forth. But as we interpret them, they averred facts which did not properly justify the conclusion. Their sufficiency is not here directly involved, because there is no error assigned on the ruling. We did not assert that there was reversible error in ruling on them. But whether sufficient or not, they can only be sustained by proof of the averment that the check was paid.

██ **Plaintiff** may likewise recover on the common counts by the proof necessary to sustain the special counts.

 The evidence shows that Birmingham Trust & Savings Company sent the check by mail, within due time to Bank of Ensley, and that the latter bank sent by mail its check on the American Traders' National Bank to the Birmingham Trust & Savings Company, and that when such latter check was received, by the Birmingham Trust & Savings Company, Bank of Ensley had gone into liquidation. If there would be an acceptance of the exchange as a payment, for the Birmingham Trust & Savings Company to send it in course of collection, which would take several days to effect, but should have returned the check and demanded cash, that assumption would not affect this case, because when Birmingham Trust & Savings Company received the exchange, Bank of Ensley had then gone into liquidation, and it could not have accomplished the purpose of securing the cash by so doing. The fact that it took the precaution to present the check for collection at the clearing house, and did not thereby cause delay or work detriment to the drawer, but would have saved time and detriment if it could by any possibility have been thus collected, did not constitute an acceptance of the exchange as a payment of the check.

Again the question is whether or not the act of the Birmingham Trust & Savings Company in sending the check by mail to Bank of Ensley for payment or collection was an invitation to pay by exchange rather than in cash, and was therefore an acceptance of such exchange as a payment pursuant to such invitation.

In the case of Federal Reserve Bank v. Malloy, supra, the court was dealing with that situation. There was a regulation by which nonmember banks were required to authorize "its Federal Reserve Bank to send checks for collection to banks on which checks were drawn." That course was pursued, and in return the exchange of the drawee was remitted. That bank was a going concern when the Federal Reserve Bank received the exchange and sent it in due course for collection. Before it was collected, the bank issuing such exchange failed, and the Federal Reserve Bank was sued by the holder, and the court held that in accepting the exchange in lieu of cash, it was responsible as though it had collected cash. It claimed that the regulation, by which it was authorized to send by mail the check to its drawee for payment, impliedly authorized it to accept the exchange of the latter bank in payment, as an inference from the authority conferred by the regulation. The court treated such claim as follows: "A distinct and inde-pendent power cannot be brought into existence by implication from the grant of another distinct power. In other words, authority to do a specific thing carries with it by implication the power to do whatever is necessary to effectuate the thing authorized —not to do another and separate thing, since that would be, not to carry the authority granted into effect, but to add an authority beyond the terms of the grant. The authority expressed by the regulation is 'to send checks for collection to banks on which checks were drawn'; the authority now sought to be annexed by implication is 'to accept exchange drafts in payment,' instead of money as required by law. That neither is a necessary means of carrying the other into effect is clear. Nor are they necessary to each other in the sense that they are corollary or dependent. Certainly a check may be sent for collection to the drawee bank without entailing the necessity of remitting the amount in the form of exchange. Currency itself may be sent, and, as will appear presently, frequently is sent. The first form of remittance, to be sure, is more convenient; but it is not of such necessity as to exclude the second on the score of impracticability. There is nothing to prevent the sending bank from requiring the drawee to remit currency as a condition upon which the check may be satisfied and charged to the account of the drawer. We must not lose sight of the fact that we are here dealing with two distinct rules of law, both of which are sought to be avoided: (a) That which forbids a bank having paper for collection to use the drawee bank as a collecting agent; and (b) that which forbids a collecting agent accepting anything but money in payment. The first rule is probably based upon the theory that the drawee is not a suitable agent for the enforcement of his own obligation, and that commercial paper calling upon him to pay should not be surrendered to and satisfied by him, with the consequent release of the drawer, except upon previous or contemporaneous payment. The second rule proceeds upon the fact that the obligation of the drawee is to pay in money and nothing else. Plainly, the two rules are of such nature that one may be abrogated without the other."

The bank also defended upon the ground that it was justified in accepting the exchange by reason of a custom. The proof was that the custom was to remit by exchange or by a shipment of currency; that the exchange was used more often than a shipment of currency. It was said that if that meant that the collecting bank had the choice of methods, and elected to have remittance by draft instead of currency, such remittance would be at the risk of the collecting bank. It was also held that if the cus-

tom to remit by draft be established, it must be known to the holder to bind him, otherwise he could expect that a remittance in cash be demanded and received. They held, however, that the custom shown being in the alternative did not authorize an election to accept remittance by draft. It was said also that: "The special situation which we are dealing with is controlled by a definite rule of law (to collect cash) which it is sought to upset by a custom to the contrary effect. It is not now necessary to consider the effect of a custom which contravenes a settled rule of law, or the limits within which such a custom can be upheld."

In our case of Farley Nat. Bank v. Pollock, 145 Ala. 321, 39 So. 612, 2 L. R. A. (N. S.) 194, 117 Am. St. Rep. 44, 8 Ann. Cas. 370, it was held that a custom for a collecting bank to send by mail the check to the drawee bank for collection or payment, contrary to the rule of law then in existence, was *unreasonable and bad* and not controlling. A "test formulated by the courts for determining the legality of alleged trade or business usages is that, where no *statute* or *principle* of *public policy* intervenes, but a rule of law is a mere privilege which may be waived, the waiver may be made by usage as well as by express contract." 17 C. J. 473.

It has been several times held in this state that though there was a rule of the law merchant (not a statute) that when the holder and indorser reside in the same city, notice of dishonor must be personal, such notice may be given by mail, if the bill is payable at a bank which by usage has adopted that mode of giving notice. John v. City Nat. Bk. of Selma, 57 Ala. 96; Ray v. Porter, 42 Ala. 327; Gindrat v. Mechanics' Bk., 7 Ala. 324. (This is now regulated by statute, sections 9126, 9127, Code, in which the distinction is based upon residence in the same "place." The word "place" in those statutes seems to strengthen our interpretation of section 9222 as stated in the former opinion).

While it may be true that section 9222, Code, authorized the Birmingham Trust & Savings Company to send the check direct to Bank of Ensley for collection, it did not authorize such bank to collect in any other medium than currency. But the collection in currency is not required by statute or public policy, but is only the legal interpretation of the effect of the contractual relations of the parties, and is for the protection of the drawer. It could undoubtedly otherwise expressly contract. We see nothing in such custom which is unreasonable.

The evidence shows that Birmingham Trust & Savings Company in sending the check for collection gave no direction as to the manner in which remittance should be made. The contrary not appearing, it could assume that remittance would be according to the legal method of doing it—in currency. But if there was a custom between them to remit in exchange, it should have anticipated that method of remittance, and should have demanded currency rather than exchange, in order that remittance in exchange should not constitute a payment in the absence of its acceptance otherwise. But if plaintiff had notice of such custom, we think there was an implication of an approval of that method of doing it.

There was no acceptance of the exchange as a payment in this case by anything done after its receipt as we have shown, and in that respect it is different from the Malloy Case, supra. Whether it should have expressly called for currency rather than exchange, and whether the failure to do so was an election in the first instance to accept exchange, depended upon the custom between the banks. If there was such a custom, and remittance was made by exchange in the absence of a demand for cash, it was an election to accept the same amounting to a payment, unless plaintiff had notice of such custom when it issued the check. In that event, remittance by exchange was approved by plaintiff, and it was not an effectual payment in the absence of payment of the exchange.

As we now understand the case, the first question is whether or not the receipt of the exchange in remittance was its acceptance as a payment. That depends upon whether there was a custom to remit in that manner. If there was such a custom unknown to plaintiff, the receipt of such exchange was a payment, because it should have been anticipated, and demand made for currency in sending it for collection. But if plaintiff had notice of such custom, the mere receipt of the exchange pursuant to the custom did not operate as a payment. So that the proposal by appellant to prove the custom and that plaintiff had notice of it was material on that question. We have not overlooked section 6381, Code. But the evidence does not show facts which bring this case within its influence.

If there was no such effectual payment so as to bind defendant to plaintiff, then the question of negligence or breach of duty in sending the check direct to Bank of Ensley becomes the inquiry. If there was such breach of duty, the recovery would be under the common counts, and be limited to the damage sustained as expressed in the Hendricks Cases, supra.

We have expressed our views of the law in that aspect of the case, and upon a reconsideration of the principles which would then apply we are content with what was stated in the original opinion.

Application for rehearing overruled.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.