## MUNDINE v. PITTS' ADM'R ET AL.

1. A purchaser from one who has the legal title to, and is in possession of land, is not affected by a latent equity of which he has no notice, until he has paid for and received a deed for the land.
2. Notice to an agent, or counsel, employed by another person, in another business, at another time, will not be constructive notice to his principal, or client, employing him afterwards.

Error to the Chancery Court of Shelby. Before the Hon. W. W. Mason, Chancellor.

THE bill was filed by the plaintiff in error to rescind a contract entered into between him and Pitts for the exclusive right to use, sell and dispose of a certain patent inven-

tion called "Pitts' patent cotton cultivator." The bill alledges fraud and circumvention, by which the complainant was induced to convey to Pitts for the right to use the said invention in certain States and Territories agreed on, nine hundred and twenty acres of land valued at $12 50 per acre, three lots in the town of Columbiana valued at $600, and executed his note for $2900. The bill also charges, that one Brasher has become possessed of the land, and was a confederate in the fraud.

The answers of Pitts and the Brashers deny all fraud. Much testimony was taken, for which, as well as the facts put in issue, see the opinion of the court, which is so full as to render repetition unnecessary.

The chancellor dismiissed the bill for want of equity—which is the matter now assigned as error.

JOHN T. MORGAN and L. E. PARSONS, for the plaintiff in error.

1. There can be no doubt that the deed was procured from Mundine by Pitts, by means of gross fraud and misrepresentation, and the sale of the land was void. Swift v. Fitzhugh, 9 Por. Rep. 40; Kennedy v. Kennedy's heirs, 2 Ala. R. 571; Juzan v. Toulmin, 9 Ala. R. 662; see cases cited in Ballentine on Lim. 74, 370.

2. The answers of the Brashers do not deny a knowledge of the fraudulent means by which the deed was procured from Mundine, but deny that they had any notice of a defect in the title, or claim of Mundine upon the land. Such a denial is a negative pregnant, and is an admission of notice of the fraud. The proof shows conclusively that T. S. Brasher had actual notice of the fraud; and this is also shown by his answer. The Brashers set up in their answers a compromise between Pitts and Mundine, and speak of all the facts as of their own knowledge. 2 Sugden on Vend. 348; Smith & Co. v. Zurcher, 9 Ala. 208.

3. The Brashers being privies in estate, the answer of one is good against the other. In this case Samuel Brasher refers to the answer of T. S. Brasher, and adopts it as true. Osborne v. Bank U. S. 9 Wheat. 738; 5 Cond. R. 741.

4. Brasher had sufficient information of the circumstances under which the trade between Pitts and Mundine was made to put him upon inquiry, and the law deems him conusant of the fraud. Green v. Slaughter, 4 Johns. Ch. Rep. 38; 1 Johns. Ch. R. 267; Willis v. Beecher, 2 Binney, 460; Day v. Dunham, 15 Johns. 555.

5. Notice to McClanahan, who was the attorney of the Brashers, was sufficient. Westervelt v. Hoff, 2 Sandf. Ch. R. 98; Hayden v. Agent Auburn Prison, Id. 195.

F. BUGBEE, contra.

1. Defendant may embrace all the matter of his plea and demurrer, either general or special, in his answer, and shall have the benefit thereof. Clay's Dig. 351, § 36.

2. Misrepresentation in matter of opinion and fact, equally open to the inquiries of both parties, and in regard to which neither could be presumed to trust the other, unless it be a mere contrivance of fraud, in cases of peculiar relationship; or where the other has justly reposed upon it and been misled, furnishes no ground for the interference of equity. Juzan v. Toulmin, 9 Ala. R. 684.

3. Misrepresentation must be material of something in which the party places a known confidence—not in matter of opinion, open to both parties for inquiry, and where neither is presumed to trust the other. 1 Story's Eq. § 197 to 201; 6 How. Miss. R. 311; Atwood v. Small, 6 Clark & Finell, 329, 447, 478, 502; Davis v. Meeker, 5 Johns. Rep. 354; 1 Dev. & Bat. Eq. R. 315.

4. No matter how positive the representations of a seller may be, it will be regarded as an expression of his belief, or opinion, unless it was intended and received as a stipulation, that the property was of the quality represented. Barnet v. Stanton & Pollard, 2 Ala. R. 184.

5. Chancery will not aid a purchaser to rescind a contract even in a case of fraud, where there has been a want of common and ordinary diligence. Steele v. Kinkle & Lehr, 3 Ala. R. 352; 9 Verm. 368.

6. Vague and indefinite statements do not avail. False representations as to value and quaility of land—specific performance decreed. 1 Sim. 13; 3 Mer. 704.

7. To enable one of the parties to a contract to defend himself for a violation by the other, he must act promptly. He cannot take the benefit on his part, and then refuse as to the benefit conferred on the other party. Casey v. Holmes et al, 10 Ala. Rep. 776.

8. If a party, with knowledge of incumbrance, proceeds to execute in part, he will be required to execute in full. Barnett v. Gaines & Townsend, 8 Ala. R. 374; Simmons v. Kornegay, 7 Ala. R. 71.

9. Difference in unfairness, which will induce a court to set aside contract, or to decree a specific performance. 5 Peters, 276; 10 Ves. 292; 2 Cox's Cases in Ch. 77; 3 Cow. 445, 530; 11 Peters, 248.

10. Fraudulent contract may be affirmed by innocent party. Fenimore v. U. S. 3 Dall. 357; 12 Pickering, 307.— Right to disaffirmance limited to time interest is in the original parties, per Elsworth, C. J., 3 Dall. 357; 1 Peters, 164; 12 Pick. 307.

11. Rescission must be in whole, not in part. Kimball v. Cunningham, 4 Mass. 502; 23 Pick. 283; Chit. on Con. 276; 3 Wend. R. 236.

12. If party has derived any benefit, cannot recover back. Taylor v. Hare, 4 B. & P. 260; Burnett v. Stanton & Pollard, 2 Ala. R. 189, 190.

13. Confirmation. 1 Story's Eq. 345; 2 Stew. 479; 2 Ves. 125; 7 Smede & Mar. 544; Burnett v. Stanton & Pollard, 2 Ala. 189; Cole v. Gibbons, 3 P. Wms. 290; Parker v. Palmer, 4 Barn. & Ald. 387.

14. Purchaser *bona fide*. 2 Story's Eq. 1502-3.

15. Equity will not interpose where party has acted upon a mistake of law. 1 Story's Eq. 139.


COLLIER, C. J.—Waiving the consideration of the general equity of the bill, we proceed to notice other questions which are presented, and are decisive of the cause. In respect to the allegations that T. H. Brasher co-operated with Pitts in making a sale to the complainant of the right to use or dispose of the "patent cotton cultivator;" and that he agreed to become a partner of the complainant in the purchase,

it is enough to say that they are denied *in toto*, and that the denial of the answers is not disproved.

Conceding that the complainant, as against Pitts and his representatives, was entitled to a rescission of the contract, and the question arises, can he recover the lots and the land of the Brashers and others, who purchased of Pitts?

T. H. Brasher denies that he advised the complainant to make a deed to Pitts with any intention of becoming the purchaser of the land in fraud of the complainant's rights, and the testimony shows, that he informed the latter, that if he conveyed the title, then he (Brasher) proposed to purchase of Pitts; he also expressed the opinion, that the bond was as binding as a deed; that there could be no fraud, as the government had issued a patent for the invention, and Pitts was authorized to sell. It cannot be assumed, in opposition to the denial of fraud in the answer, that this opinion was not honestly entertained; nor can it be inferred that the complainant confided in, or was influenced by it. Besides, the declaration by Brasher, that he expected to purchase of Pitts, if the complainant made a conveyance, tends to show an absence of *mala fides*, and that Brasher considered a deed necessary to authorize Pitts to perfect titles to him; and the subsequent execution of the deed, with a knowledge of such intention, if it does not warrant the implication of the complainant's assent to Brasher's purchase, at least indicates, that in conveying to Pitts, he acted with a previous knowledge of the intention of the latter to sell.

Both the Brashers affirm by their answers, that their purchase was made in good faith—that they paid Pitts $6,000, and received a deed from him and wife, duly acknowledged, &c., before they had notice that the complainant claimed the land, or insisted upon the right to rescind the contract. In fact, they believed the deed to Pitts was executed upon a compromise and settlement of the matters of controversy growing out of the sale of his patent to the complainant. In respect to the *bona fides* of the transaction between Pitts and the Brashers, the consideration paid by the latter, and the execution and delivery of the deed to them, their answers are fully sustained by Pitts. There is nothing in the record to implicate its fairness, and the testimony is full and explicit

to make out the consideration of the deed, its execution and delivery.

It is well settled, that where a person is invested with a regular legal title to land, evidenced by a deed duly executed from one who was authorized to sell and convey it, and is himself in possession, a purchaser from such person, who has no notice, either actual or constructive, of an adversary claim at the time he pays the purchase money, and obtains a conveyance, will hold the land against all the world; except in the case of a prior claim, which is afterwards registered within the time prescribed by law; or perhaps where the adverse claimant was an infant, *feme covert*, or under legal disability. Fenno et al. v. Sayre & Converse, 3 Ala. Rep. 458, 475, and cases there cited; Billington, Lessee, v. Welsh, 5 Binn. Rep. 129; Dexter v. Harris, 2 Mason's Rep. 531; Jackson v. Henry, 10 Johns. Rep. 185; Swartz v. Moore, 5 Sergt. & R. Rep. 257; Stahl v. Spohn, 8 Id. 317. Conceding that it is shown by the testimony, that in the modified contract between the complainant and Pitts, it was stipulated the deed by the former to the latter should become void if the "patent cotton cultivator" should prove to be a useless invention, and still the complainant is not in a predicament to be exempt from the operation of the rule we have stated. If therefore the Brashers had no notice of the equity of the complainant against Pitts, when they paid for and received a deed for the land which they purchased of the latter, they cannot be affected by it.

We have examined the volume of testimony in the record, and it certainly does not show that the Brashers were purchasers with notice. The deposition of McClanahan, which is mainly relied on for that purpose, proves that he wrote the deed from the complainant to Pitts, and that it was understood at that time, it should not prejudice the complainant's right to rescind or make defence against his contract for the purchase: but the witness explicitly declares, that he does not know whether this understanding was communicated to either of the Brashers. Fagan's testimony is substantially the same as the preceding.

It is however insisted, that as McClanahan wrote the deed
12

from the complainant to Pitts, and was then informed of the
reservation of the contingent right to rescind, the law will
intend that the Brasher's possessed the same information,
because McClanahan, a few days afterwards, wrote the deed
from Pitts to them.   As a general rule, it may be admitted,
that if an agent or attorney acquire knowledge, or receive
notice of a fact, while engaged in the discharge of his duties
as such, it will be presumed that it was communicated to his
principal or client, or the principal or client are at least charge-
able in the same manner as if personal notice was communi-
cated to them.   But beyond this, the rule does not extend
or it would operate injustice.   *Lord Hardwicke* said, "It is
stated, that notice to an agent, or counsel, who was employ-
ed in the thing by another person, or in another business,
and at another time, is no notice to his client, who employs
him afterwards; and it would be very mischievous if it was
so, for the man of the most practice and greatest eminence
would then be the most dangerous to employ."   Worsley v.
The Earl of Scarborough, 3 Atk. Rep. 392; Warrick v.
Warrick, Id. 294; Le Neve v. Le Neve, Id. 650; Lowther v.
Carlton, 2 Id. 242.   To the same effect see Lucas v. The
Bank of Darien, 2 Stew. Rep. 321; Terrell v. The Branch
Bank at Mobile, 12 Ala. Rep. 502, and cases there cited.
These citations are conclusive to show, that the Brashers
cannot be charged with a constructive notice of the circum-
stances under which the deed from the complainant to Pitts
was executed, merely because McClanahan, who had such
knowledge, afterwards wrote the deed from Pitts to them.
This being so, it results from what has been said, that their
title must prevail against the complainant.

What has been said upon the law of the case applies with
all force to the other purchasers of the town lots, and the
eighty acres of land not embraced by the conveyance to the
Brashers.   If the bill is so framed as to entitle the complain-
ant to relief against Baker, Havis and Roper, the proof is de-
fective in making out such a case.   Havis states in his an-
swer that he purchased one of the lots of Baker which he
paid for, and at the request of Baker received a deed for two
of them of Pitts, without any notice of the complainant's
claim to them, or suspicion of the validity of Pitts' title.

Neither Baker or Roper are made defendants, and the fact
that the former was the purchaser of the lots, is only shown
by Havis' answer; and Roper himself testifies, that he pur-
chased the eighty acres tract of land at a sale by the sheriff as
Pitts' property—but when, does not appear.  Havis' answer
is not contradicted by the testimony, and as for Baker and
Roper, no decree could be rendered in the cause which would
affect their interests or impair their rights, whatever the proof
might be; because they are not made parties to the suit.  It
results as an obvious sequence, that the complainant is not
entitled to relief against Havis.  The only remaining inqui-
ry is, what are his rights upon the case made by the bill and
proof against Pitts.

We need not consider what were the rights of the parties
under the original contract, or whether Pitts practised such
a fraud upon the complainant as entitled the latter to insist
upon its rescission.  However this may be, it is alledged in
the bill that more than one year after Pitts made to the com-
plainant a sale of his patent right for several states, &c. the
latter proposed to rescind the contract, to which Pitts did not
assent : whereupon it was agreed between them, that the
complainant should give Pitts his note for $150, and make a
deed to him for the lands embraced by the first contract, and
not previously conveyed.  In consideration of which, Pitts
delivered up to the complainant the note which he held on
the latter for $2,900—it was at the same time agreed, and as
a part of the compromise, that the complainant should not be
put to the trouble and expense of a lawsuit to rescind the
contract, but if the "patent cotton cultivator" failed to an-
swer the purpose intended by it, then Pitts would re-convey
all the lands and town lots which the complainant had con-
veyed to him, and the contract should be annulled.  These
are the allegations of the bill.  The only proof upon the point
is found in the depositions of McClannahan and Fagan.
Both these witnesses concur in stating that it was agreed be-
tween the parties the complainant did not deprive himself of
the right to rescind the original contract by executing a deed
for the land, and modifying it in respect to the amount of
money he had undertaken to pay; that if the notes taken
upon sales made by the complainant of the right to manu-

facture or use the "patent cotton cultivator," should be ad-judged by the courts not to be recoverable, then, the contract should be rescinded.

The proof is full and direct that the invention of Pitts was not a valuable improvement in agriculture—in fact, that it failed to answer the expectations both of the complainant and the patentee. But the terms on which the modified con-tract provided for a rescission of the original was, that the notes received upon the sales of the plough, should be judi-cially determined not to be recoverable. Now, conceding that the allegation is adapted to the testimony, and still the proof is at fault in not showing that the courts had decided against the complainant's right to recover upon sales made by him. Such evidence is indispensable to entitle him to rescind according to the terms which the parties themselves have stipulated; and in its absence, the complainant is not entitled to the redress which he seeks against Pitts.

This view is decisive of the cause, and shows our concur-rence in the conclusion of the chancellor, if not in the rea-soning employed by him, and relieves us from the necessity of considering the equity of the bill, except so far as this may have been done incidentally. The decree of the court of chancery is consequently affirmed.