# Hinton v. Citizens' Mutual Insurance Company.

*Bill in Equity for Reformation and Foreclosure of Mortgage.*

1. *Decree against non-resident, on publication; petition to set aside.*—When a decree in chancery against a non-resident defendant, rendered on publication only, without personal service or appearance, is set aside on his petition, and he is let in to defend, the petition has accomplished its purpose, and the cause stands as if such decree had never been rendered; consequently, it is not a material question afterwards, whether he had notice of the pendency of the suit or not.

2. *Notice to agent; when not binding on principal.*—Notice to an auctioneer, employed to make a sale of lands, of the pendency of a suit against his principal respecting the property, does not operate as notice to his principal, being outside the scope of his powers and duties.

3. *Amendment of bill, or answer; when refused in vacation.*—The allowance of an amendment to the bill or answer, to meet any state of the evidence which will sustain the claim or defense set up, is matter of right in the party asking it, and not matter of discretion with the court (Code, § 3790); but, when the application to amend is made in vacation, without notice to the adverse party, it may be refused for that reason

4. *Reformation of written instrument; when decreed.*—A court of equity will reform a written instrument, on the ground of mistake, only on clear and satisfactory evidence of the mistake as alleged: in the absence of such evidence, the writing remains the sole expositor of the agreement of the parties.

APPEAL from the Chancery Court of Sumter.

Heard before the Hon. A. W. DILLARD.

The bill in this case was filed on the 22d March, 1876, by the "Citizens Mutual Insurance Company," a corporation

chartered under the laws of this State, and located in the city of Mobile; and sought to reform and foreclose a mortgage executed to said company, or to its secretary for its benefit, by the partners composing the firm of G. A. Brown & Sons. The mortgage was dated the 25th March, 1875; purported to secure the payment of a promissory note for $2,423.90, of even date with the mortgage, and payable on the 1st January, 1876; and conveyed a tract of land, which was therein described as follows: "All that tract of land, lying and being in Sumter county, Alabama, known as the 'Knight place,' and numbered as follows: all of the north half of section thirty-three (33), township twenty (20), range one (1) west, which lies south of the Martin's Ferry road; and the south-east quarter of section four (4), township nineteen (19), range one (1) west; said to contain five hundred and twenty-nine (529) acres, more or less." The note was made payable to "S. W. Allen, sect. C. I. Co."; and the mortgage recited that it was payable to "S. W. Allen, sect. of Mobile Mutual Insurance Company," and conveyed the lands to "S. W. Allen, sect."; but the bill alleged that Allen was the complainant's secretary, that the indebtedness was due to the complainant, and that the mortgage was intended to convey the lands to it, or for its benefit, and that these mistakes were caused by inadvertence on the part of said Allen, who had died before the filing of the bill. The bill alleged, also, that there was a mistake in the description of the lands intended to be conveyed; that the intention was to convey the entire tract of land known as the "Knight place"; and that the following portions of the tract were, by mistake, omitted in giving the numbers, to-wit: "the south-east quarter of said section thirty-three (33), and the north-east quarter of said section four (4)."

The partners composing the firm of G. A. Brown & Sons, the executrix and sole devisee of S. W. Allen, deceased, Geo. W. Bates, and George W. Hinton, were made defendants to the bill; said Bates being joined, under an averment that he was in possession of the lands; and Hinton, because he claimed to hold a mortgage on the lands, dated the same day with the complainant's mortgage, and purporting to be given to secure a debt due to him from said Brown & Sons; and the bill alleged that the complainant's mortgage was entitled to priority over Hinton's mortgage, because it was first recorded, and complainant had no notice of Hinton's. The partners composing the firm of Brown & Sons, and Hinton, were non-residents, and publication was prayed and duly made against them as non-residents; and a decree *pro confesso*, on proof of publication, was duly entered against them in term

time, before the chancellor. At the same term (May, 1876), the cause being submitted for final decree, on the bill and exhibits, and decrees *pro confesso*; the chancellor rendered a decree for the complainant; ascertaining by calculation the amount due on the complainant's mortgage, and ordering a sale of the lands by the register; and also requiring the complainant to execute a bond, as prescribed by the statute (Code, § 3831), before having execution of the decree.

In November, 1876, Hinton filed his petition, asking to have the decree set aside, and to be allowed to file an answer; alleging that he had no notice of the pendency of the suit, until about the 26th September, 1876. The chancellor thereupon set aside the decree, and allowed an answer to be filed by Hinton, on payment of costs. In his answer so filed, which was under oath, Hinton set up his mortgage, and claimed under it a priority and preference over the complainant's mortgage; alleging that, though it was dated the 25th March, it was in fact executed, delivered, and acknowledged on the 24th, and that the 25th was inserted by mistake. As to the consideration on which his mortgage was founded, the answer contained the following allegations: "Prior to the execution and delivery of said mortgage, said G. A. Brown & Sons were engaged in the cotton commission business in Mobile, Alabama; and respondent sent to them a large number of bales of cotton, for sale on his account. Said cotton was sold by them in the usual course of trade and business, but they failed to pay over the proceeds of sale to respondent; and he went to Mobile, and the best settlement he could get, for his money in their hands, was their note and mortgage for the balance of the proceeds of this sale. This is the consideration for said mortgage." In the petition to set aside the decree, the consideration was thus stated: "Prior to the 24th March, 1875, said G. A. Brown & Sons were engaged in the cotton and commission business in Mobile, Alabama; and your petitioner sent to them a large number of bales of cotton, for sale on his account. Said cotton was sold, in the usual course of trade and business, by said Brown & Sons, but they failed to make returns, as was their duty to do; and your petitioner went to Mobile, and obtained from them part of the proceeds of sale of his cotton, and obtained a mortgage for the balance on the lands decreed to be sold in this case." The answer and petition alleged, also, that on the 17th April, 1876, the mortgage debt not being paid at maturity, Hinton caused the lands to be sold, under a power of sale contained in his mortgage; at which sale, one George Stoutz became the purchaser, for

about the amount of the mortgage debt, and afterwards conveyed to Hinton.

The complainant's mortgage was recorded on the 29th March, and Hinton's on the 11th May, 1875. Each party insisted that the other's mortgage was given for an antecedent indebtedness, and not for a debt or liability presently created or assumed; and each claimed priority for his mortgage. Hinton also denied the alleged mistake in the complainant's mortgage, and alleged that the complainant, or said S. W. Allen, its secretary, was informed by Brown & Sons of the prior execution of his mortgage at the time the complainant's mortgage was given. No testimony was taken by the complainant, to prove the alleged mistake in the description of the lands conveyed by its mortgage. The defendant took the deposition of Thomas Le Baron, of Mobile, an auctioneer, by whom the sale under Hinton's mortgage was made in April, 1876; and who testified, in answer to cross-interrogatories filed by the complainant, that at that sale the complainant's solicitors gave public notice of the pendency of this suit, and of the fact that Hinton was a party to it. The defendant also took the deposition of G. A. Brown, one of the partners of said firm, who testified to the date, execution, &c., of Hinton's mortgage, and stated its consideration thus: "The consideration of said mortgage was not sales as commission-merchants by G. A. Brown & Sons, but was in consideration of fifteen bales of cotton loaned to G. A. Brown, jr., as a private matter, and the amount assumed by the firm of G. A. Brown & Sons."

After the testimony was in, the complainant submitted a motion to strike Hinton's answer from the files, and to render a decree final against him; because his petition and answer both denied that he had any notice of the pendency of the suit, while the depositions of Le Baron and Stoutz showed that said Le Baron, while making the sale under his mortgage as his agent, was notified of the suit. At the June term, 1877, the cause was submitted to the chancellor for final decree, on pleadings and proof, and on the motion to strike the answer from the files; and was reserved for consideration in vacation. In vacation afterwards, while the cause was still in the hands of the chancellor, Hinton applied to the register for leave to amend his answer, by striking out the allegations as to the consideration of his mortgage, and making its averments correspond with the testimony of G. A. Brown, above stated; but the register declined to act upon the application, and forwarded it to the chancellor. The chancellor overruled and refused the application to amend, because (with other reasons) no notice of it had been

given; and he proceeded to render a final decree for the complainant, holding—1st, that the notice to Le Baron, the auctioneer, charged Hinton with notice of the pendency of this suit before the first decree was rendered against him, and therefore he should not be allowed to re-litigate the matters settled by that decree; 2d, that the complainant's mortgage was entitled to preference and priority over Hinton's; 3d, "that said mortgage clearly shows, on its face, that the entire tract of land known as the 'Knight place,' containing 590 acres, more or less, was intended to be, and was in fact, conveyed to complainant by said mortgage"; and ordering a sale of the entire tract, for the satisfaction of said mortgage.

From this decree Hinton appeals, and here assigns each part of it as error, with the refusal of the chancellor to permit him to amend his answer.

JAMES COBBS, and G. Y. OVERALL, for appellant.

SNEDECOR & COCKRELL, contra. (No briefs on file.).

BRICKELL, C. J.—1. A decree in chancery, rendered without personal service, against a defendant who does not appear, is not absolute for eighteen months after the rendition thereof. At any time within this period, such defendant has the liberty of filing a petition to open the decree, and to be let in to defend upon the merits; and if sufficient cause is shown, the chancellor is bound to open the decree, and hear the cause, as if it had not been rendered.—Code of 1876, §§ 3830-31. Upon a petition disclosing merits, the chancellor opened the decree which had been rendered against the appellant, on a decree *pro confesso*, obtained on publication, without personal service. When the cause was opened, and the appellant let in to defend, the petition had accomplished its purposes: the cause stood in court as if the decree had not been rendered; and it was not a material fact, whether constructive notice of the pendency of the suit, before the rendition of that decree, could or could not be traced to the appellant.

2. Notice, in legal proceedings, is of great variety, and its character and sufficiency, and the mode of giving it, depend upon the requisitions of the law, and its purposes, in the particular instance. The denial of notice in the petition to open the decree, if that was now a matter of inquiry, was of notice in the mode to which the appellant was entitled, and not of the constructive notice which may be imputed to a principal, of facts made known to his agent. Besides, it was not within the scope of the duties of an auctioneer, employed

to make sale of property, to take or receive notice of the pendency of suits against his principal, affecting the property. The chancellor was in error in regarding the cause as *res adjudicata*, because of the former decree, and the information given to the auctioneer, of the pendency of the suit prior to its rendition.

3. The statute is broad in its terms, that, at any time before final decree, amendments to bills must be allowed, to meet any state of the evidence which will authorize relief; and of answers, to set up any matters of defense.—Code of 1876, § 3790. The amendment is matter of right—it is not matter of favor, resting in the discretion of the court. The only inquiry the court can make is, whether there is evidence to support the amendment, and it is material, not capable of being introduced in the present state of the proceedings. This being ascertained, the chancellor may impose such terms as are just under the peculiar circumstances, not extending beyond the payment of all costs; but he cannot disallow the amendment. No closeness of construction has been, or can be, given the statute, but it has been, and must be regarded, as remedial, and must be so construed that its beneficent purposes will be promoted. Notice of the amendment to the opposite party is necessary, when it is not claimed in open court, after his appearance. In the present confused state of the record, we cannot determine with any certainty the precise character of the amendment—whether it was of the answer, or of the petition to open the decree. But application for it was made in vacation, without notice to the complainant; and for that reason, the chancellor properly disallowed it.

4. The reformation of written instruments is made by a court of equity, only on full and satisfactory evidence that, by mistake, they express more or less than the parties intended. Until, beyond reasonable controversy, the mistake is made to appear, the writing must remain the sole expositor of the intent and agreement of the parties.—1 Brick. Dig. 685, § 644. Without any evidence of mistake, and though it was denied in the answer of the appellant, the chancellor proceeded to reform the mortgage to the appellee, introducing into it lands not previously described. This was manifest error, compelling a reversal of the decree.

We do not deem it proper now to consider and pass upon any of the other questions involved in the controversy, as they will probably hereafter be presented under a different state of pleading, and, it may be, of evidence.

Reversed and remanded.