(130 So. 180)
GIRARD FIRE & MARINE INS. CO. et al. v. GUNN.

8 Div. 140.

Supreme Court of Alabama.

March 20, 1930.

As Modified on Denial of Rehearing June 26, 1930.

Further Rehearing Denied Oct. 23, 1930.

Coleman, Coleman, Spain & Stewart, of Birmingham, and Eyster & Eyster, of Decatur, for appellants.

656

S. A. Lynn, of Decatur, for appellee.

THOMAS, J.

The appeal is from two judgments consolidated by agreement. They involved the same questions, and were tried as one case in the circuit court.

This is the second trial that has resulted in judgment for plaintiff. The first appeal—that from the granting of a new trial—was affirmed in Gunn v. Palatine Insurance Co., 217 Ala. 89, 114 So. 690.

The pleadings on this, the last trial, consist of complaint in Code form, declaring up-

on the policy of fire insurance, pleas 2, 5, 6, 8, 10 to 16, inclusive, to which demurrers were sustained, and pleas 1, 3, 4, 7, and 9, to which plaintiff's demurrers were overruled. The trial was had on these pleadings and replications 2, 3, 4, and 6 to pleas 3 and 9, which averred knowledge or notice of the matters set up in the pleas indicated—of the condition of the title and nature of assured's interest in the property.

The classes of pleas on which trial was had were general issue (plea No. 1), that setting up contract provisions of the policy, that same would be void if the subject of the insurance was located upon land not owned by assured, or "if the interest of the assured be other than unconditional and sole ownership," and averred that breach (plea No. 3).

It is further pleaded the provisions of the policy against vacancy or nonoccupancy for a period of thirty days (plea 4), and that plaintiff did not have an insurable interest in the property at the time of its destruction by fire (plea 7) ; that the interest of assured was other than unconditional and sole ownership, and the breach of stipulations of the policy as to this (plea 9).

A number of facts are undisputed. The evidence showed substantially that the insured property, prior to the time the plaintiff attempted to purchase it, was owned by Dr. Stubbs, who died about the last of June or the 1st of July, 1924 ; it was not his homestead, as he and his family lived in the state of Louisiana at the time of his death. Dr. Stubbs attempted to will all of his property to his wife, Elizabeth S. Stubbs ; that instrument was invalid under the Alabama law, for the reason that it was not properly witnessed. The testator, at the time of his death, did not have any children surviving him, and he owned other property ; he had a number of heirs who were his nephews and nieces. The property in question descended upon his death to his heirs at law, subject to a prospective or contingent right of dower in his widow, Mrs. Elizabeth S. Stubbs.

After the death of Dr. Stubbs (on the 30th day of June, 1925), the plaintiff entered into a contract with Mrs. Elizabeth S. Stubbs whereby she agreed to sell, and he agreed to buy, the insured property for the sum of $1,500, of which $150.00 was payable in cash and the balance in installments of $500 in six months from July 1, 1925, and $850 due in twelve months from July 1, 1925. Mrs. Stubbs, on the day of that purported sale, executed a warranty deed conveying the property to the plaintiff. This warranty deed was placed in escrow to await fulfillment of completed payments of the purchase price.

The evidence shows that the plaintiff had never made other payments than the $150 on the contract ; had not secured delivery of the deed, and had paid no sum whatsoever other than the one indicated—the $150 which he paid at the time of the execution of the contract on June 30, 1925. Three months thereafter the property was destroyed by fire (on or about September 11, 1925) ; and some of the witnesses testified that, although on the last day of June the plaintiff had agreed to purchase the house and lot for the sum of $1,500, the reasonable value of the house (not including the lot) was $4,000 to $4,500. The testimony tended to show further that the house was vacant for more than thirty days prior to the fire ; that a short time prior to the fire some bathroom fixtures were removed from this house.

The evidence failed to show that dower had been set aside or assigned to Mrs. Elizabeth Stubbs, or that she was entitled to any dower in the insured property.

The plaintiff introduced one witness who was a member of the firm of Wyatt & Son, who issued the policies, and who testified that before the policies were written he had learned that the will of Dr. Stubbs was invalid ; but no evidence was introduced to show that he acquired such knowledge while acting as agent for the appellant in the instant transaction, or acquired it while acting within the line and scope of his authority as agent for the appellant. The evidence is undisputed that Wyatt & Son were also real estate agents who negotiated the sale of the property from Mrs. Stubbs to plaintiff. Could the reasonable inference be drawn that Wyatt & Son acquired the knowledge as to the invalidity of the will while acting as agent in selling the property?

Plaintiff testified he did not know how long Dr. Stubbs had owned this property ; could not swear that Dr. Stubbs "ever owned this individual property" ; understood he had a good deal of property in town, including this property ; understood he owned it some time prior to his death.

Defendant introduced the will of Dr. William Carter Stubbs, in which he gave all of his property in the states of Virginia, Alabama, and Louisiana to his wife, with full power of disposition. It was witnessed by only one witness—Wm. H. Brynes, Jr., judge.

Defendant examined L. B. Wyatt, who testified that he knew Dr. W. C. Stubbs, and that the latter owned this property at the time of his death ; that Mrs. Stubbs was in the possession of the property during the year 1925, and that prior to June 30th she collected rents from it, and claimed to own it ; that after June 30th rent was collected by the plaintiff from various tenants ; that he sold this property to plaintiff as agent for Mrs. Stubbs, and during the time he was acting as insurance agent for defendants ; that the defendants were insuring this property for Mrs. Stubbs until it was purchased by the plaintiff ; and at this time witness so advised

the defendants, and they instructed witness to cancel the policy in Mrs. Stubbs and re-write it in the plaintiff's name, with the loss payable clause to Mrs. Stubbs, and all of which was shown by his daily report to them; that he did not know of his own knowledge whether prior to his death Dr. Stubbs had conveyed his interest in the property to his wife; that "along about February, 1925, prior to the sale of the property to the plaintiff," the heirs of Dr. Stubbs entered into an agreement, and "did agree" to quitclaim any interest they might have in the Dr. Stubbs property to Mrs. Elizabeth Stubbs; that the conveyance of their several interests to Mrs. Stubbs was on March 1, 1926. As to this, the record recites:

"The witness was then asked the following question:

"Q. Mr. Eyster asked you if you had any written authority from the heirs of Dr. Stubbs to convey this property to Mr. Gunn—Now I will ask you if it isn't a fact that along about February, before this sale took place, if the heirs did not agree that they would quitclaim any interest that they might have in Dr. Stubbs property to Mrs. Elizabeth Stubbs?

"The defendants objected to the question on the ground that it called for irrelevant, illegal and immaterial and secondary evidence in violation of the statute of frauds, and calls for an opinion of the witness. The court overruled the objection and the defendants then and there duly reserved an exception.

"The witness answered: A. They did.

"Whereupon the Court stated: I permitted that to go in for the purpose of showing whether or not the witness being examined, knew the condition of the title of the property in the policy.

"The witness was then asked the following question:

"Q. Now, the premiums that were paid on these policies, $37.37 on one, and $37.35 on the other, was the premium for the full interest in that property wasn't it?

"The defendants objected to that question. The court overruled the objection and the defendants then and there duly reserved an exception.

"The witness answered: A. Certainly, yes."

This witness testified that the premiums were paid on these policies for the full interest in the property, and he had authority from the defendants to collect this premium. This property was occupied by tenants on up until just a few days before the fire.

The defendants introduced in evidence a deed from the heirs of Dr. William Carter Stubbs (of date of March 1, 1926), reciting that Dr. Stubbs died July 7, 1924, leaving a last will and testament, which had been duly recorded in the office of the judge of probate of Morgan county, Ala., and which said will conveyed all the property of Dr. Stubbs to his wife; that they desired to ratify, adopt, and confirm all of the provisions of said will, and to that end executed a deed conveying to her all their right, title, and claim in and to the various lots of land, including the lot in question. The date of that conveyance was March 1, 1926; the house in question was destroyed by fire September 11, 1925, and the policy issued on July 4, 1925.

Harry Wyatt testified that he was a member of the firm of L. B. Wyatt & Sons, and executed the policies in question; that at the "time" he "knew that the property covered by the policies was the property of Mr. Gunn." He knew the will was not attested, and discussed the matter with the probate judge and with attorneys; saw the certified copy of the will that was filed for record in the probate office of Morgan county, Ala. As to this the record recites:

"Q. Did you learn that prior to July 4th, 1925? Defendants objected. The Court thereupon stated: I will let you (plaintiff) ask the question: 'Did he learn it did not have two witnesses?' * * * A. Yes, sir, I learned the will wasn't witnessed. * * *

"Q. Had you discussed that with any lawyer at that time? * * * A. Yes, sir. * * *

"Q. Had you been advised by them that the will did not convey title from Dr. Stubbs to his wife? * * * A. Yes, sir. * * *

"Q. Were you advised by them that the will was invalid and ineffective to convey title? * * *

"The witness answered: A. Yes, sir, I was advised it would not hold.

"The Court: That was before these policies were written? A. Yes, sir. * * *

"Q. You had seen the certified copy of the will that had been offered for probate here in Decatur, Morgan County, Alabama? * * * A. Yes, sir, I saw a copy of the will. It came to my office. * * *

"Q. You discussed it with Judge Troupe, the Probate Judge? * * * A. Yes, sir."

Plaintiff introduced in evidence the defendant's answers to interrogatories, in which the defendant admitted that, following the fire, it questioned the plaintiff with reference to his title and interest in the property; that some time after the examination and investigation was had it authorized the Southern Adjustment Bureau to make settlement.

Plaintiff, in answer to question from defendant's attorney, testified that he did not know that the property in question was a part of the Stubbs estate when he negotiated to buy it; that he knew it belonged to Mrs. Stubbs. The witness (E. E. Gunn) said:

"As to whether I knew it belonged to him before he died and then afterwards belonged to his estate, Mr. Eyster, I did not know where Dr. Stubbs's property was. No, sir, I did not know that this was the Stubbs property of my own knowledge. I just presumed it belonged to him from his widow owning it. Yes, sir, I was around Mr. Wyatt's office quite a bit from time to time. As to whether I knew Mr. Wyatt handled this property for Dr. Stubbs during his life time, well, I understood he was the agent for Dr. Stubbs during Dr. Stubb's lifetime, and as to whether he was handling this piece of property for Dr. Stubbs, collecting the rent on it, and one thing and another, I don't know as I knew this particular property, because I said a while ago I did not know where Dr. Stubbs' property was. I knew he owned a good deal of property around town, but did not know just where the location was."

If there is a difference in the effect of the witness on the instant point, in his direct and cross-examinations, a jury question was presented as to this fact of his knowledge of ownership by Dr. Stubbs. Jones v. Bell, 201 Ala. 336, 77 So. 998; McMillan v. Aiken, 205 Ala. 35, 40, 88 So. 135. We think there is no conflict. We cannot attach the effect insisted by appellants as to the ratification of Mrs. Stubbs's interest after the fire, by all the heirs at law of Dr. Stubbs. Such subsequent acts by the owners of the fee could not change the contract rights of the parties at and when the policy of insurance was issued and delivered to Gunn. And such a contract that is void remains so, unless revived by consent of the insurance company. Penn. Fire Ins. Co. v. Malone, 217 Ala. 168, 115 So. 156, 56 A. L. R. 1075; North River Ins. Co. v. Waddell, 216 Ala. 55, 112 So. 336, 52 A. L. R. 838. The courts hold the assured must have insurable interest at the time of issuance of a policy, and at the time of the loss. Commercial Fire Ins. Co. v. Capital City Ins. Co., 81 Ala. 320, 8 So. 222, 60 Am. Rep. 162; Ætna Fire Ins. Co. v. Kennedy, 161 Ala. 600, 50 So. 73, 135 Am. St. Rep. 160; Pope v. Glenn Falls Ins. Co., 136 Ala. 673, 34 So. 29; Cooley's Briefs (2d Ed.) 190 et seq.

In view of the positive pronouncements made by this court in Gunn v. Palatine Ins. Co. et al., 217 Ala. 89, 114 So. 690, that the defect presented "was not a mere question of defect of title, but extent of ownership," and that on this question defendants were entitled to the general affirmative instruction. It was further said on former appeal (217 Ala. 91, 114 So. 690, 691) that:

"The recent case of New Brunswick Fire Ins. Co. v. Nichols, 210 Ala. 63, 97 So. 82, deals with the stipulation here involved, and, in holding that there was a breach of the provision of the policy as to ownership in fee simple by the insured of the lot on which the building was located, came in conflict with the decision in Commercial Union Assur. Co. v. Ryalls, 169 Ala. 517, 53 So. 754, which latter case was there overruled."

And it is the law of this case that appellee here is not the sole and unconditional owner of the insured property, and the building is on ground not owned by assured in fee simple.

The burden was upon plaintiff to show his insurable interest or extent thereof. Ætna Fire Ins. Co. v. Kennedy; Commercial Fire Ins. Co. v. Capital City Ins. Co.; Pope v. Glenn Falls Ins. Co., supra; May on Ins. §§ 115, 116. It is unnecessary to discuss the evidence, statutes, and decisions as to Mrs. Stubbs' right vel non to dower. Sections 7428, 7429, Code; Francis v. Sandlin, 150 Ala. 583, 43 So. 829; Chavers v. Mayo, 202 Ala. 128, 79 So. 594; Martin v. Evans, 163 Ala. 657, 50 So. 997.

Thus we are left to the only question now presented, that of waiver, which is invoked by the replications and the evidence on the last trial. Is it not different in material aspects from that before the court when Mr. Justice Gardner observed as to this:

"We have read the evidence with great care and in the light of this insistence, but we are unable to find any testimony presenting a jury question to the effect that the agent had any knowledge as to the actual character or extent of interest acquired by plaintiff in his purchase. Indeed, we are rather impressed that the agent was of the opinion plaintiff had acquired the full title. The replication was not sustained by the proof." Gunn v. Palatine Ins. Co., 217 Ala. 92, 114 So. 690, 691.

The questions of waiver, extent, and consideration supporting the same were of recent discussion in Great American Ins. Co. v. Dover, 219 Ala. 530. 122 So. 658, and Royal Ex. Assur. Co. v. Almon, 202 Ala. 374, 80 So. 456.

On the former trial and on this trial the plaintiff (appellee) filed replications to appellants' pleas setting up the lack of sole and unconditional ownership, etc., alleging that the agent who wrote and countersigned the policy did so with full knowledge of the exact title held by the plaintiff. The court held that there was no evidence whatever to sustain these replications. Upon this second trial appellee sought to introduce evidence to show that the agent who wrote and countersigned and delivered the policies sued upon had knowledge of the title of Mrs. Elizabeth Stubbs. This evidence was to the effect that he, prior to the issuance of the policies, learned that the will of Dr. Stubbs was not witnessed, and that prior to the issuance of the policies he had talked to a lawyer in regard to it, and that he (Wyatt) had been advised by the lawyer or lawyers that the will was invalid and ineffective to convey title.

It is insisted by appellants that this evidence was incompetent and not sufficient to show that he knew that the plaintiff did not have a good title or that he knew just what title the plaintiff had when the policies were issued. It is held by the authorities that notice to an agent is not notice to the principal, unless the knowledge is *acquired by the agent while engaged in the business of the principal within the line and scope of his authority and respecting a transaction then depending.* In this material aspect, to bind the principal the evidence set out above falls short of the requirements of the rule in this jurisdiction.

In Queen Insurance Co. v. Young, 86 Ala. 431, 5 So. 116, 119, 11 Am. St. Rep. 51, this language is used:

"Notice to an agent is notice to the principal only when it is acquired while engaged in the business of the principal, within the scope of his authority, and respecting a transaction then depending. Hill, Fontaine & Co. v. Helton, 80 Ala. 528, 1 So. 340."

To like effect is Traders' Insurance Co. v. Letcher, 143 Ala. 400, 39 So. 271, 275, declaring:

"It is not averred in either of them that Saffold was acting for and in behalf of defendant as its agent in procuring the additional insurance for plaintiff. Non constat he represented the plaintiff in procuring the second policy, or the London Insurance Company, that issued it. If he was defendant's agent at the time the second policy was issued, the acquisition of the knowledge of its issuance while acting for plaintiff or the London Company would not be the knowledge of the defendant company, since it was not acquired by him while transacting the business of defendant as its agent. Central of Ga. Ry. v. Joseph, 125 Ala. 313, 319, 28 So. 35, and cases there cited."

It is observed in Central of Ga. Ry. Co. v. Joseph, 125 Ala. 319, 28 So. 35, 37 that:

"A corporation, like an individual, may be bound by knowledge or information given its agents; but this must be limited to such knowledge or information as comes *to the agent in transacting the business of his principal, and is not to be extended to information or knowledge acquired by the agent, which he receives outside of the line of his duty, or while engaged in the transaction of his purely personal affairs.* This principle is too thoroughly established, and has been too long settled as a rule of law, by the decisions of this court, to now admit of controversy. Frenkel v. Hudson, 82 Ala. 158, 2 So. 758, 60 Am. Rep. 736; Goodbar, White & Co. v. Daniel, 88 Ala. 583, 7 So. 254, 16 Am. St. Rep. 76; Reid v. Bank of Mobile, 70 Ala. 199; Whelan v. McCreary, 64 Ala. 319; New York & Ala. Con. Co. v. Selma Sav. Bank, 51 Ala. 305, 23 Am. Rep. 552; Hinton v. Citizens' Mut. Ins.

Co., 63 Ala. 488; Terrell v. The Branch Bank of Mobile, 12 Ala. 502." [Italics supplied.]

In Hall & Brown Woodworking Mach. Co. v. Haley Furniture & Mfg. Co., 174 Ala. 190, 56 So. 726, 728, L. R. A. 1918B, 924 (opinion by Mr. Justice Somerville), the following language is employed:

"By a long line of decisions, this court is thoroughly committed to the rule that knowledge acquired by an agent prior to his agency, or in regard to matters outside the line of his duty, or while pursuing his own or some other person's business, is not notice to his principal of such fact or facts, and is not binding upon him. Mundine v. Pitts, 14 Ala. 84; Pepper v. George, 51 Ala. 195; Reid v. Bank of Mobile, 70 Ala. 211; McCormick v. Joseph, 83 Ala. 403, 3 So. 796; Wheeler v. McGuire, 86 Ala. 398, 5 So. 190, 2 L. R. A. 808; Goodbar v. Daniel, 88 Ala. 590, 7 So. 254, 16 Am. St. Rep. 76; Bessemer L. & I. Co. v. Jenkins, 111 Ala. 135, 149, 18 So. 565, 56 Am. St. Rep. 26; Central of Ga. Ry. Co. v. Joseph, 125 Ala. 313, 28 So. 35; Pearce v. Smith, 126 Ala. 116, 28 So. 37; Scotch Lumber Co. v. Sage, 132 Ala. 598, 32 So. 607, 90 Am. St. Rep. 932; Patterson v. Irvin, 142 Ala. 401, 38 So. 121; Traders' Ins. Co. v. Letcher, 143 Ala. 410, 39 So. 271.

"The fundamental requirement is that such knowledge on the part of an agent to bind his principal 'must be limited to such knowledge or information as comes to the agent in transacting the business of his principal.' Central of Ga. Ry. Co. v. Joseph, 125 Ala. 319, 28 So. 37. This is a simple rule, easy of application, and just in its results.

"Where the agent's knowledge is of this character, it is constructive notice to the principal entirely regardless of the principal's actual knowledge. Wiley v. Knight, 27 Ala. 346. This is usually explained by saying that the law conclusively presumes that the agent has in fact communicated his knowledge to his principal. We think, however, that the better and more logical explanation is that with respect to the given transaction the agent is in law identified with his principal; that knowledge that comes to the agent, while acting in such matter for his principal, would have come to the principal had he been acting for himself; and that, as a rule of policy and justice, he must be equally charged therewith. Soey v. State, 41 N. J. Law, 395; Houseman v. Girard Ass'n, 81 Pa. 256–262.

"But on either theory, the rule is not a rule of evidence merely, as is sometimes declared, but a rule of substantive law." Blount County Bank v. Harris, 200 Ala. 669, 77 So. 43; Robertson Banking Co. v. Brasfield, 202 Ala. 167, 79 So. 651; Green, State Supt. of Banks v. Harsh, 204 Ala. 520, 86 So. 392; First National Bank of Chattanooga, Tenn. v. Hunstville Bank & Trust Co., 213 Ala. 236, 104 So.

760; Hanna Motor Co. v. State, 215 Ala. 431, 111 So. 1.

In the recent case of Wiggins v. Stewart Bros., 215 Ala. 9, 109 So. 101, 102 (opinion by Mr. Justice Bouldin), is used this language:

Notice of an unrecorded deed to an attorney, to be binding upon his client, must be shown to have come to the attorney while acting in the line of his duties as attorney; must be received as attorney while engaged in a service for his client to which the notice is related. Alabama W. R. Co. v. Bush, 182 Ala. 113, 62 So. 89; Traders' Ins. Co. v. Letcher, 143 Ala. 400, 39 So. 271; Mundine v. Pitts' Adm'r, 14 Ala. 90."

These pronouncements have not been departed from by later decisions; that is, it is settled in this state that notice to an agent, to be binding upon his principal, must have been acquired while the agent was (1) acting in the business of the principal, and (2) in the line and scope of his employment as such agent for that principal.

■ The recent case of Green v. Westchester Fire Ins. Co. (Ala. Sup.) 128 So. 436,[1] deals with the sufficiency of such pleading as challenged by demurrer, and the scope, duty, effect, and knowledge of a general agent issuing the policy. Under our scintilla of evidence rule prevailing, a jury question was presented by the testimony of Harry Wyatt and his response to the question specifically propounded by the court that he was advised of assured's defect in title before these policies were written.

■ It is further necessary, we think, that we consider the giving of the affirmative charge under the loss payable clauses in the several policies issued by the respective defendants. They are in like form, as follows:

"Loss Payable Form—Any loss that may be ascertained and proven to be due the assured under the building items of this policy shall be held payable to Mrs. Elizabeth S. Stubbs as interest may appear, subject, nevertheless to all the terms and conditions of this policy."

A loss payable clause in a policy gives such named payee the superior right to recover, to the extent of the amount of his or her interest shown to the court, and the assured can only recover any balance in excess. Union Ins. Soc. of Canton, Limited, v. Sudduth et al., 212 Ala. 649, 103 So. 845; Globe, etc., Co. v. Pappas, 219 Ala. 332, 334 [4], 122 So. 346; Capital City Ins. Co. v. Jones, Assignee, 128 Ala. 361, 365, 30 So. 674, 86 Am. St. Rep. 152; Taber et al. v. Royal Insurance Co. et al., 124 Ala. 681, 26 So. 252; Fire Insurance Companies v. Felrath, 77 Ala. 194, 54 Am. Rep. 58.

There was no objection to the policies in evidence as urged by a claimant. The affirmative charge was properly refused.

[1] Ante, p. 344.

■ The thirty-fifth assignment of error challenged the sustaining of demurrer to rejoinder No. 5 to replications dealt with above. It was: "Defendant says that at the time said alleged agent of defendant acquired notice or knowledge of said alleged facts as set out in said replication, the said agent was also acting within the line and scope of his employment as agent for the plaintiff in and about the business of the plaintiff. Wherefore defendant says that notice to or knowledge of said alleged facts by said agent of defendant are of no effect and not binding on this defendant"; and was not subject to the demurrer that it was not averred or shown that defendants' said agent was the agent of plaintiff in and about obtaining the insurance contract, or other grounds of demurrer assigned. In Morris v. First National Bank, 162 Ala. 301, 50 So. 137; Central of Georgia Railway Co. v. Joseph, 125 Ala. 313, 28 So. 35, it was declared that, where an agent occupies a dual relation, notice acquired by him in such agencies is not binding on the principal. This is sound in principle and necessary to a right conduct of agency and fidelity to the respective principals. The case made by this pleading and those in the Morris and Central of Georgia Cases, supra, were not within the influence of McEntire, Wagnon & Thomas Co. v. Rock Hill Buggy Co., 172 Ala. 637, 639, 55 So. 494, and Burnwell Coal Co. et al. v. Setzer, 203 Ala. 395, 83 So. 139, where two corporations dealt through one alter ego of both. There was error in sustaining the demurrer to the rejoinder set out above (No. 5).

■ There was exception reserved to that part of the oral charge as follows:

" 'If you find for the plaintiff that the amount found will draw interest from the time stated in the policy. You gentlemen of the jury can ascertain that from the policy.'

"Mr. Lynne: I am willing for the Court to charge the jury they can only begin sixty days after January 1st, 1926.

"Thereupon the Court further charged the jury as follows:

"If you find for the plaintiff then you will compute interest on the amount you find as the damage—you will compute the interest only from a period from sixty days after January 1st, 1926. In other words you begin computing interest March the first or March the second, 1926.

"Mr. Eyster: The defendant still reserves an exception," etc.

Interest did not accrue on the amount due from the date stated in the policy, as it is declared therein that such amount did not become due until sixty days after due notice, ascertainment, estimate, and satisfactory (required) proof of loss had been received by

662

the company—in accordance with policy terms. It was:

"(1) This company shall not be liable beyond the actual cash value of the property at the time of any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deduction for

"(2) Depreciation however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality; said ascertainment or estimate shall be made by the insured and this company, or, if

"(3) They differ, then by appraisers, as hereinafter provided; and the amount of loss or damage having been thus determined, the sum for which this company is liable pursuant to this policy shall be payable sixty days after due notice, ascertainment,

"(4) Estimate, and satisfactory proof of the loss have been received by this Company in accordance with the terms of this policy."

In this instruction there was error. It results from this and sustaining of the demurrer to rejoinder indicated that the judgment of reversal and remandment was correct, and the application for rehearing is denied. It is unnecessary to consider further assignments of error.

Reversed and remanded; application for rehearing denied.

ANDERSON, C. J., and SAYRE and BROWN, JJ., concur.