181 So. 114

NORTH RIVER INS. CO. v. FLIPPO.

8 Div. 875.

Supreme Court of Alabama.

April 14, 1938.

Rehearing Denied May 19, 1938.

Coleman, Spain, Stewart & Davies, of Birmingham, for appellant.

Fred S. Parnell, of Florence, for appellee.

THOMAS, Justice.

The suit was on a policy of insurance. The judgment was for the plaintiff on controverted material facts under the extended pleadings.

The evidence supported the pleadings of plaintiff and defendant, respectively, and a jury question was presented on each phase of pleading. McMillan v. Aiken et al., 205 Ala. 35, 88 So. 135.

The several pleadings and issues of fact are stated by able counsel for appellant as follows:

On or about November 19, 1936, plaintiff filed a purported proof of loss which did not comply with the policy requirements. On December 12, 1936, the adjuster for the appellant wrote the appellee and advised him that the proof did not comply with the policy requirements and pointed out specifically wherein it did not comply: Among other things, the adjuster pointed out, it was stated, in substance: (1) That the proof did not state the interest of the insured and all others in the insured property as required by the policy. (2) It did not state the knowledge and belief of the insured as to the time and origin of the fire, as required by the policy. (3) It did not state whether the insured was the sole and unconditional owner of the premises or the owner in fee simple or whether there had been any change in the title, use, occupation, location, possession, or exposure of the property since the issuance of the policy, as required by the policy. (4) It did not state for what purpose the building was occupied at the time of the fire. This letter stated other reasons why the proof did not comply.

Subsequent thereto, on December 17th, the insurance adjuster wrote to the attorney for plaintiff and advised him that he had advised the plaintiff, in substance, wherein the proof did not comply. The evidence is that subsequent thereto the assured did not file any other proof of loss and did not in writing otherwise comply with the requirements of the policy as to notice or proof of loss.

The assured testified that after the fire, and before the nonwaiver agreement was signed, he went to see Mr. Edwards, the acting and insuring agent of appellant, and told him about his loss; that Mr. Edwards

told him he would get, or would be paid, what his policy was issued or called for. The week after that he talked to Mr. Edwards again and Edwards told him that, as soon as the adjuster made his report, he would get his money; that Edwards told him, in the presence of Mr. White, that the company was slow sometimes, but that the face of the policy would come on the notice of loss given.

The witness Ed White testified that he was in the furniture business and that Mr. Flippo wanted to buy some furniture after the fire and that Flippo and witness went to see Mr. Edwards who told witness, in Flippo's presence that he would be safe in selling Mr. Flippo the furniture as the latter would get a check within a week.

This conversation is denied by Mr. Edwards, who testified in substance that he told Mr. White he did not know whether he would be safe in letting Flippo have the furniture or not; that he did not have anything to do with the adjustment of the loss, and that the adjustment was in the hands of the adjuster, Mr. Eady, and that he did not at any time tell Flippo that he would get his money, or make such statement in substance.

Mr. Eady, the adjuster for appellant, testified, in substance, that when he came upon the scene of the loss and when Flippo told him that he did not own the property, he asked him to sign a nonwaiver agreement, because the policy would be violated if he did not own the property. The nonwaiver agreement appears in evidence, and Flippo admits that he signed the same, under circumstances stated, without having an opportunity to read it. On rebuttal Flippo testified that at the time he executed the nonwaiver agreement, Mr. Eady told him it did not amount to anything and asked him to sign the paper, stating that it was merely a permit for the fire marshal to investigate the fire. This is denied by the adjuster, who testified that he did not have anything to do with the fire marshal and that he asked the plaintiff to sign the nonwaiver agreement because Flippo had told him that he did not own the land, but that he merely had an agreement to buy the lot and that he had no deed to it.

The testimony of plaintiff was to the effect that his conversation as to the proof of loss was with Edwards in the conduct and agency of defendant, and it was his understanding that there was no further notice required as a condition precedent to the payment, which was before the nonwaiver agreement was signed.

It is unnecessary to consider the nature, effect, or office of a nonwaiver agreement. Such matters are discussed and applied in our decisions in Insurance Co. of North America v. Williams, 200 Ala. 681, 77 So. 159; American Ins. Co. v. Millican, 228 Ala. 357, 153 So. 454; National Union Fire Ins. Co. v. Morgan, 231 Ala. 640, 166 So. 24.

█ The evidence as to waiver vel non by the agent of the company before the execution of the nonwaiver agreement, and the circumstances under which it was signed, under conflicting tendencies of evidence, was (as we have indicated) for the triers of the facts, under the long line of decisions by this court.

As to the ownership of the property, it may be said, that the evidence shows the insured did not own the lot on which the building stood; that plaintiff's building stood on lot No. 16; that at the time he erected the building he had a sublease on the lot from a Mr. Goodwin, who in turn had a lease on lot 16, together with other property, from the Florence Land Company, which owned all of the property involved.

The assured testified that he did have a lease with an option to buy lot No. 13 which was executed on the 26th day of June, 1935, but that this contract was never transferred to lot 16 on which his house stood. He testified that he had a verbal agreement with Mr. Paxton, the representative of the Florence Land Company that if and when the next payment was made on his contract he would then transfer the contract from lot 13 to lot 16, which latter is the lot on which the house stood, but that his next payment was never made. The assured testified: "It was to be transferred when the next payment was made but my next payment was never made."

The evidence is further to the effect that Goodwin did have a lease on all of the lands involved from the Florence Land Company but that his lease expired in 1935. At the time Goodwin had the lease on the land he gave a sublease to Flippo. Inasmuch as the original lease expired in 1935, Flippo's lease also expired at that time.

Flippo testified that at the time he took the policy out he told the local agent, Mr. Edwards, that he had bought the lot but it was not paid for.

Mr. Edwards testified that he was not in the office when the policy was applied for by Flippo, but that Flippo applied for the policy to a young lady in his office and that he did not see or talk to Flippo at that time.

The testimony of Edwards was corroborated by Mrs. Klusmeir, who testified, in substance, that she worked for D. J. Edwards; that when Flippo came into the office to apply for the policy she was alone in the office and Edwards was not there and did not come in while Flippo was there; that Flippo asked her to write a policy on the house and that she wrote the policy herself.

On rebuttal Flippo testified that, at the time of the issuance of the policy, he borrowed some money from Edwards who was operating a loan company, and that a part of this was used to pay the premium on the insurance policy.

We are thus brought to a consideration of demurrers to plaintiff's replication to defendant's pleas 2, 3, 4, and 5. The pleas were in bar that assured did not have an "unconditional and sole ownership" or the "subject was a building owned by the insured in fee simple" either at the time of the issuance of the policy or at the time of the fire.

In response thereto the replication alleges in substance that before the time of the issue of the policy the plaintiff fully advised D. J. Edwards, who was the agent of the defendant and who, as such agent, countersigned the policy of fire insurance and issued it, of the true state of the title; and that, with knowledge of the true condition of the plaintiff's ownership and title, the said agent issued and delivered the policy to plaintiff.

 The rule declared in this court is that assured, not owning the fee-simple title, the insurer without notice could not be said to have waived this defect in title or interest, unless defendant or its authorized agent knew before the policy was issued that plaintiff did not own a fee-simple title to the property; but that he did own an insurable interest therein, and that its nature was fully disclosed or known to defendant; and with a full knowledge by the defendant, or its authorized agent, of the nature of such insurable interest as plaintiff had, the policy was issued by defendant or its authorized agent and delivered to plaintiff. Royal Exch. Assur. of London, Eng.,

v. Almon, 206 Ala. 45, 89 So. 76; American Equitable Assur. Co. v. Powderly Coal & Lumber Co., 225 Ala. 208, 142 So. 37; Insurance Co. of North America v. Williams, 200 Ala. 681, 77 So. 159; Girard Fire & Marine Ins. Co. v. Gunn, 221 Ala. 654, 130 So. 180.

Under the foregoing authorities and grounds of demurrer assigned, it was not reversible error for the court to overrule defendant's demurrer to replication No. 1, directed as answer to the pleas 2 to 5, inclusive. Whether the replication was subject to demurrable defects or not, it was not subject to the grounds of demurrer assigned.

The judgment of the circuit court is affirmed.

Affirmed.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.